No. 3851

Second Circuit

(Second Division)

————

CITY OF SHREVEPORT v. BARNES

————

(July 16, 1931. Opinion and Decree.)
(August 12, 1931. Rehearing Refused.)
(October 5, 1931. Writs of Certiorari and
Review Refused by Supreme Court.)

————

A. M. Pyburn, of Shreveport, attorney for plaintiff, appellee.

Harry V. Booth, of Shreveport, attorney for defendant, appellant.

CULPEPPER, J. This is a suit brought by rule under Act No. 55 of 1926, to have defendant, as plaintiff's alleged lessee, vacate the leased premises. Defendant denied leasing the property from plaintiff, and alleged he was in possession under a lease from the Texas & Pacific Railway Company, the true owner of the property. From a judgment in favor of plaintiff ordering defendant to vacate, the latter has appealed.

On November 22, 1926, defendant addressed the following letter to plaintiff:

"Shreveport, La., Nov. 22, 1926
"HON. MAYOR & COMMISSIONERS,
  CITY OF SHREVEPORT, LA.
"Gentlemen:—
"Please accept this as my application to lease the lands as outlined by map attached belonging to the City, which is not and never has been used by the City for any purpose whatsoever, I desire as long as lease as I can get and will agree to keep the property up, clear out the underbrush, repair and replace the fencing, also I further agree to relinquish or release my rights at any time the City wants the property for its own use.

"This I think will be acceptable to you gentlemen as the City will not only save money, but really revenues will accrue to the City and the property kept in first class condition until such time as the city needs or wants to use it.

"May I ask you gentlemen to pass such resolutions as are necessary to give me proper administration of this property and as small a consideration in addition to

the above as consistent with business judgment.

"Yours very truly,
(Signed) "C. J. Barnes."

The map attached to the letter shows to be a rough sketch made by defendant, dated November 20, 1926, showing the land as being bounded on the east by Red river, west by right of way of the Texas & Pacific Railroad, north by right of way of Cotton Belt Railroad and Cotton Belt Railroad bridge crossing Red River, and south by an apparently imaginary and undesignated line running approximately east and west from Red River to the Texas & Pacific Railroad right of way. Across the area designated as the land in question on the map is written in defendant's handwriting the following description of the land which the application was made to lease:

"Map of the land lying South of the Cotton Belt Bridge and between the T. and P. Railroad and Red River."

Plaintiff, through its mayor, L. E. Thomas, addressed the following reply to defendant's letter, with defendant's written acceptance in reply at bottom of page on which letter was written:

"Shreveport, Louisiana,
November 22, 1926
"Mr. C. J. Barnes,
C/o L. & A. Railroad,
City.
"Dear Sir:
"Replying to yours of the 22nd inst., I beg to advise that after discussing with the City Council the proposition of leasing you the land lying below the Cotton Belt Railroad Bridge, to a point indicated in your letter, I wish to advise that we will lease this to you for $50.00 per year in order to give you control over it, reserving the right of the City to retake possession of it at any time it may find it necessary to do so.

"It will be necessary to specify the length of this tract so that there may be some definite meets and bounds to the land and it will also be necessary to draw up a lease.

"Very truly yours,
(Signed) L. E. Thomas,
Mayor."
"1/31/27
"The above terms accepted, please make as long a lease as possible.
(Signed) C. J. Barnes."

The above letters and map were attached to and made a part of plaintiff's petition, and relied on by it as constituting the alleged contract of lease to defendant of the property in question, together with the allegation of fact that defendant went into possession of the property as lessee of plaintiff pursuant to the application, the reply thereto and acceptance, as above disclosed.

Plaintiff further alleges that defendant has never paid the $50 per year rental; that there is now past due and unpaid the rent for the years 1927 and 1928, which defendant has failed and refused to pay; and

"VI.
"That the City of Shreveport now finds it necessary to retake possession of the said leased premises.

"VII.
"That because of the failure of the said C. J. Barnes to pay the rent and because the City of Shreveport has found it necessary to re-take possession of the property, and has given due notice that it is necessary to re-take possession of same, the City of Shreveport now has the right to invoke the process of the Court to get possession of its property."

The petition further sets out the fact of the passage of an ordinance by the city authorizing legal proceedings under Act No. 55 of 1926, the proceedings had thereunder, and prays for and obtained rule

upon defendant to show cause why he should not vacate the property and deliver possession of same to the city.

Defendant filed answer of general denial, except to admit the correspondence attached to petition, but denies the legal significance thereto as alleged; admits not having paid plaintiff any rents and denies plaintiff ever at any time made demand for payment; admits receiving notice to vacate, and sets up as a special defense, the following alleged facts:

That in 1924 he began negotiations with the city of Shreveport (hereafter referred to as the city) with reference to a tract of approximately eighty acres of land, lying south of the St. Louis S. W. Railway Company property and between the Texas & Pacific right of way and Red river; that he was of the belief at that time, and for some time thereafter, that said property was lawfully owned by said city, "which error of fact is specially pleaded herein as defense to this suit"; that after various negotiations with the city, through its mayor and council, respondent addressed his letter of November 22, 1926, attached to plaintiff's petition applying for a lease upon the property from said city; that the same day the city wrote respondent a letter, whereby the city agreed to lease said property to respondent, and (quoting)—

"further agreed that at a later date, a written lease would be entered into and it was the understanding between the said City of Shreveport, through its Mayor, and your respondent, at that time, that the City of Shreveport would have such a lease drawn as would conform with the application for a lease and which would contain a proper description of said land, rental price and terms."

Defendant further alleges he made numerous demands upon the city, through its mayor and council, subsequent to November 22, 1926, to execute such a lease as was agreed upon, but was instructed by the mayor on these occasions to go to the city engineer's office and ascertain the status of the property, which defendant did do, and that the city engineer told respondent the property did not belong to the city.

Defendant further alleges that after persistent efforts to obtain a lease from the city without success, he employed counsel, who discovered that the property did not belong to the city but was owned by the Texas & Pacific Railway Company, whereupon respondent then obtained consent of said railway company to occupy the property; that "he has since occupied and is now occupying (same) as a tenant by suffrance."

Defendant further alleges he did not go into possession under any agreement or contract with the city, but went into possession under an agreement and contract with the Texas & Pacific Company, and is now holding possession by virtue of said agreement. Respondent therefore alleges that plaintiff cannot maintain this action for the reason, that—

(a) The city did not own nor have any claim of ownership of the property now in respondent's possession, at the time negotiations were begun by respondent to obtain a lease.

(b) That the relation of landlord and tenant does not exist between plaintiff and defendant, for the reason that no lease was ever entered into, but to the contrary negotiations were merely carried on which were never consummated.

(c) That no rent was ever paid and none demanded.

(d) That respondent is lawfully in possession under an agreement with the Texas & Pacific Railway Co.

(e) That respondent did not go into

possession under an agreement or contract with the city.

Defendant prayed for an order calling the Texas & Pacific Railway Company in warranty. A blank for an order of call in warranty is attached to the answer, but is unsigned. The minutes of May 15, 1929, the date fixed for trial of rule, show that counsel for defendant asked the court for an order for a call in warranty and that the request was refused upon objections by counsel for plaintiff. Neither the minutes nor the testimony show any reasons for the objection or ruling of the court refusing a call in warranty. The minutes show counsel for defendant excepted to the court's ruling, but the exception does not appear to be urged in brief before this court. The case was submitted on brief before this court, without argument.

The trial of the rule was continued to May 18, on which day defendant filed an exception of no right or cause of action, which on its face does not disclose upon what ground it is founded. Defense counsel made a statement, however, recorded by the court reporter at page 17 of transcript, indicating that the exception was filed "on the theory that if anything, this was a mere agreement to lease; that the lease was never entered into, and consequently there is no lease, the documents attached to the petition merely showing that the lease was to be entered into." We assume the exception was leveled at that part of the pleadings and upon the theory as stated by counsel. Counsel also stated that the exception was overruled by the court. We assume that it was, although the minutes do not show that it was ever tried or in any way passed upon by the court. Such an exception would address itself more to the merits of the case, since plaintiff's allegation is that de-

fendant went into possession as lessee under plaintiff, by virtue of his application to lease the property, the favorable reply thereto by plaintiff, followed by defendant's acceptance upon the terms, conditions and reservations as outlined by plaintiff. Plaintiff contends that under these circumstances it at least has the right to recover possession of its property. It will be noted that plaintiff is not suing to recover rents, but merely seeks to be restored to its former status. Taking the case from that viewpoint, we think plaintiff had a cause of action, and that if the court did overrule defendant's exception, the ruling was correct.

Mr. L. E. Thomas, as mayor of the city, testifying, related the incidents of the negotiations had by and between him, as representing the city, and defendant, leading up to the written application of defendant of November 22, 1926, the mayor's written reply thereto on same date, and his receipt of return of the letter from defendant with the latter's acceptance written and signed at bottom of the letter, all of which was substantially as alleged in the petition. Being asked if he attempted to execute any further contract after he had written the letter of November 22, and had received same back with defendant's written acceptance at bottom of his letter, Mr. Thomas answered as follows:

"I didn't because that letter and the acceptance of it practically closed the contract because the terms are stated in the letter and the agreement is (was) accepted by Mr. Barnes signing."

He says he had no further negotiations with Mr. Barnes. Asked if Mr. Barnes went into possession after this had been done, Mr. Thomas answered, "He did." However, upon cross-examination, Mr. Thomas stated that Mr. Barnes went into

possession of the property by virtue of a previous agreement had with him in the spring or summer previous, which was in 1926. According to Mr. Thomas' testimony, defendant came to him in the spring of 1926, and wanted to get permission to graze cattle on the land; that he, Mr. Thomas, Mr. Mayo and Mr. Dixon, members of the city council of Shreveport, signed an agreement to defendant permitting him to graze his cattle on the land free of charge; that later on it was found that defendant was renting some of the land to other parties and collecting pay for it, and Mr. Thomas stopped him; that then it was that defendant began negotiations for a lease for pay which resulted in the written application of November 22, 1926.

It will be noted in this connection that defendant filed a supplemental answer on the day previous to the trial, in which he alleged he had been in actual, peaceable, notorious possession of the property described in his original answer since 1921. While defendant presumably intended, in setting up this allegation of possession, to establish possession independently in himself, and otherwise than through plaintiff, yet he does not allege such possession was as owner; neither does he allege in the supplemental answer that the possession therein alleged upon was under or through the Texas & Pacific Railway Co. In his original answer defendant alleged he began negotiations with plaintiff for a lease in 1924. Whatever may have been his intentions, whether to set up prior possession as owner, or as a squatter or through some person other than plaintiff, such would be of no avail to defendant in view of his judicial admission in answer that he subsequently negotiated with plaintiff for a lease upon the property, thereby recognizing plaintiff as owner. It is true that

defendant alleges he was in error of the fact that plaintiff was not owner, yet he treated plaintiff as the owner continuously throughout the entire negotiations, and for some time thereafter when trying, as he alleged, to induce plaintiff to reduce the lease to formal writing.

When defendant took the witness stand and was asked by his counsel as to when he first took possession of the property, opposing counsel interposed the following objection:

"That is objected to if its purpose is to show any possession in himself prior to the date of November 22, 1926, the date that he applied to the City Council to lease this property."

And the court made the following ruling:

"Objection sustained insofar as it has that effect."

As we take it, defendant was not allowed to set up independent prior possession in himself, notwithstanding he had filed an amended answer alleging he had been in actual, peaceable, notorious possession since 1921. While it would seem that defendant should have been permitted to offer proof in support of that allegation, could his testimony alone have availed him anything in the face of his own record as otherwise made up? We think it could not. Defendant admits in his answer having begun negotiations in 1924 with the city; that after various and sundry negotiations with said city through its council and mayor he addressed the application to them of November 22, 1926, for a lease. Defendant filed in evidence letters of December 4, 1924, March 24, and April 9, 1926, which he had received from the mayor, referring to these negotiations. In the letter of December 4, 1924, the mayor begins by saying:

"In compliance with your request, I wish to advise that the City of Shreveport has no objection to your using the ground * * * it being understood that it is only a permissive to you * * * it being understood that the City can take property at any time, without notice that it needs the same for its own use * * *"

Surely defendant could not hope to be able to show independent possession in himself in view of these circumstances. It is clear, we think, from defendant's own admissions, that possession was not as owner, nor was it through any one other than plaintiff. It is also clear that the same character of possession existed at the time of defendant's application of November 22, 1926, and that possession was such as characterized that of tenant under plaintiff as landlord; that on January 31, 1927, when defendant formally accepted plaintiff's offer to let defendant have the property at $50 per year until such time as plaintiff might call for it, he all the more certainly assumed the relationship toward plaintiff as that of tenant. Defendant does not pretend that he went into possession under the Texas & Pacific Railway Company until long after his acceptance of plaintiff's proposition. It is not shown even then that defendant ever informed plaintiff of his alleged change of relationship. It is true, defendant contends he never did assume such relationship towards plaintiff in the first place for the reason that he never did actually and in fact lease the property from plaintiff. We think such relationship existed as to warrant plaintiff the right to demand its property back and be restored to its former status, even if no valid and binding contract of lease was created. If the Texas & Pacific Railway Company is the lawful owner of the property in question, that would be a matter to be settled between it and the city of Shreveport.

Mayor Thomas testifies the property belongs to the city. Defendant dealt with the city as owner of the property, and so recognized it throughout all his dealings in this matter. We think defendant cannot be heard to deny such as being the case.

Counsel for plaintiff, in brief, argues that there was a valid and binding contract of lease entered into between plaintiff and defendant, thereby creating between them the relations of landlord and tenant, in that the three elements, viz.: the thing, the price and the consent, were all present. We agree with him as to the existence of these three elements in this case, but counsel for defendant contends that there was only a preliminary agreement to enter into a contract of lease and that it was understood that the preliminary agreement was to be later reduced to a formal written lease, which was not done, and that being true, defendant had the right to withdraw from the agreement at any time before the formal written lease was executed. Counsel cites as authorities Hart v. Tremont Lbr. Co., 131 La. 847, 60 So. 368, 369, and Woodville v. Kantrowitz, 115 La. 810, 40 So. 174, as well as other decisions. The Hart case is not one involving a rent contract. It involves the question of recovery by plaintiff from defendant for work under a verbal contract which was to have been reduced to writing but was not so executed. The court said:

"In answer to the proposition that a written contract was necessary, we will state in general terms, by way of illustration, where there is a sale of real property * * * generally it cannot be enforced, unless an agreement or some memorandum be written and signed. The same is true of personal property, where it is agreed that nothing shall be done before a written agreement has been signed.

"Here there was no written agreement,

but the work was performed in accordance with the verbal agreement."

We find in that case the court held defendant liable for so much of the work as was shown to have actually been done. The court in this connection said:

"There was tacit approval to such an extent that defendant cannot be heard to deny the contract, and cannot escape all liability because it peremptorily discharged, without cause, the plaintiff, and put an end to his work."

The Woodville v. Kantrowitz case, cited supra, did involve an alleged rent contract, brought about very similar to the present case—that is, by letter offering to take a lease and a reply of acceptance written at bottom of the offerer's letter. Nothing further was done toward the execution of a formal written lease. Woodville, who was the owner of the premises and accepted the offer made to him by Kantrowitz, the person offering to take the lease, sued Kantrowitz, alleging he had suffered loss of $70 by reason of Kantrowitz's failure to go into possession of the premises. The court rejected plaintiff's demands for the reason that it found that there was no contract of lease ever entered into between the parties. The court enunciated the principle of law, that:

"Where, in a preliminary agreement for the lease of real estate, whether such agreement be verbal or in writing, it is stipulated that the lease shall be reduced to writing, the contract of lease is not completed until the writing is made and signed, and until then either party may withdraw."

In the mayor's letter of November 22, 1926, replying to defendant's application of like date for a lease upon the property involved in this suit, he states:

"It will be necessary to specify the length of this tract so as that there may be some definite meets and bounds to the land and it will also be necessary to draw up a lease."

The plain and unambiguous language used by the mayor would seem to place the case in the class with that of the Woodville case, in so far as the question of a contract of lease vel non was created by virtue of the preliminary agreement. But in the Woodville case the defendant did not go into possession, therefore there was no tacit acceptance. Suppose Kantrowitz had gone into possession, or that he was already in possession under some previous agreement with Woodville, and continued that possession without paying rents. Can it be said for a moment that just because the agreement by which he entered upon the premises turned out not to be a valid and binding lease contract, Woodville would have been powerless to remove Kantrowitz, or to collect rent during Kantrowitz's occupancy? Most assuredly not. Just as in the Hart v. Tremont Lbr. Co. case, supra, defendant was held to have to pay for the amount of work actually performed by reason of the tacit approval.

As stated previously, we think defendant's possession from the beginning was, in his relationship to plaintiff, that of tenant under plaintiff; that it so continued on up to, during and after the negotiations had around the date of November 22, 1926, and plaintiff had the undoubted right to evict defendant in the manner and kind of proceedings brought, and to be restored to his former status as to the property.

For these reasons, we think the judgment appealed from should be affirmed, and it is so decreed.