HAWTHORNE, Justice.
 

 Breaux Brothers Construction Company, a Louisiana commercial partnership, instituted this suit against Associated Contractors, Inc., a Louisiana corporation, seeking to recover damages in the sum of $42,802.99 for the breach of an oral contract which plaintiff allegedly had with defendant to' remove dirt from certain drainage canals' in Lafourche Parish. After trial on the merits there was judgment rejecting plaintiff’s demands, and plaintiff has appealed.
 

 The only issue in this case is whether there was a valid contract entered into by the plaintiff and the defendant.
 

 Plaintiff contends that it has proven all the requisites necessary to the validity of a contract prescribed by Article 1779 of the Civil Code, that is: Parties legally capable of contracting; their consent legally given*;
 
 *723
 
 a certain object which forms the matter of agreement; and, finally, a lawful purpose. A:s we have found that the element of consent is lacking in the case at bar, it is not necessary to consider whether the other three requisites set out in Article 1779 are present.
 

 Defendant concedes that the parties entered into negotiations with regard to a possible contract, but avers, among other •things, first, that there was never any final, binding contract made because the object and the price were never agreed on, and, second, that it was contemplated that any agreement which might be reached as a result of their negotiations would be reduced to writing and -signed by the parties, and thi.s was- never done.
 

 •' 'The pertinent facts necessary for the decision in this -case-are these: The Police Jury of Lafourche Parish gave notice that it-would receive bids on Má'rch 14, 1951, for thé' construction of'approximately 36 miles b'f drainage canals in that parish involving thfe' excavation and removal of approximately-"871;000 cubic yards of dirt. Associated Contractors, Inc., was contemplating bidding for this construction work, and on March,,4,. 1951, .Ray, and Freund, two offiqeirSsOf defendant corporation, went, to the site of the proposed work to look things pver. On their way home they happened to . meet Fred Breaux, a member of plaintiff partnership. The work involved in the construction of the .drainage canals, requj^e.d equipment,, for. doing both “dry land work” and “water work”, according to the terminology used by the parties. Since the defendant had no equipment to do the water work, Breaux at that time informed the defendant’s officers that his company had such equipment and would be interested in subcontracting for that part of the construction requiring this kind of equipment. It appears that during the March 4 meeting the parties examined blueprints of the proposed work and discussed the possibility of defendant’s subcontracting the water work to the plaintiff should the defendant be the successful bidder on the job. Breaux testified that the portion of the work which his company was to do was definitely agreed on at that time, and that the defendant’s officers agreed that his company would be subcontracted that portion of the work which would have to be done from a barge. However, this is denied by Ray and Freund. Before parting the three men agreed that they would meet again on March 14 at Thibodaux.
 

 It is plaintiff’s contention that the alleged oral contract entered into between it and the defendant was perfected in the course of the two meetings which took place on March 4 and March 14, 1951, between Breaux, Ray, and Freund.
 

 At the first meeting on March 4, discussed ■ above, no definite agreement was reached concerning the price to be paid plaintiff for its work. Consequently no valid contract came into existence as a result of this meeting.
 

 
 *725
 
 The second meeting of these parties took place at Thibodaux on March 14, a short time before the bids for the canal construction work were submitted to the police jury. During the trial Breaux testified that at this second meeting he discussed with Ray and Freund the amount which the defendant would bid on the proposed work. He stated that he suggested a bid of from $.15% to $.17% per cubic yard for the excavation of dirt, and that they all agreed that-defendant would submit a bid of $.1569 for each cubic yard to be removed in the construction of the canals. Breaux further testified that he agreed to do his part of the work under a subcontract at the same price as that bid by defendant. It is apparent from the record that when this meeting ended Breaux considered that his company had a binding agreement with the defendant.
 

 Ray and Freund, on the other hand, flatly denied at the trial that there was any understanding between the parties as to the price. They testified that Breaux had no knowledge of the price in defendant’s bid until after its bid was opened; that, after defendant’s bid had been opened and accepted, Breaux informed them that he wanted the same price they had bid, $.1569, for the removal of the dirt involved in the water work under a subcontract; that they asked Breaux whether he would be willing to pay any part of the one per cent bonding costs (approximately $1,360) which defendant would have to pay to its bonding company under the principal contract; that.Breaux refused to do so; that they neyer reached any agreement as to the price,'and' that at this point all negotiations terminated.
 

 As the testimony as to the price of the proposed work is in direct conflict, we do not think that plaintiff has established with reasonable certainty that there was any agreement as to the price of the proposed work. Breaux himself admitted that, after defendant’s bid had been accepted, they were still discussing the price and who, would pay the bonding costs.
 

 Article 1798 of the. Civil Code, which deals with the consent necessary to give validity to a contract, provides:
 

 “As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract;
 
 the will of both parties must unite on the same point.”
 
 (All italics ours.) "
 

 As it has not been proved to our satisfaction that the will of the parties in the case at bar united on the price, we are of the opinion that one of the requisites necessary to the validity of a contract as set out in Article 1779 of the Code is wanting— the consent of the parties legally given.
 

 Moreover, we have found that the consent of the parties in the instant case is defective for still another reason. Both Ray and Freund insisted throughout their testimony that all during the negotiations it was intended by all parties that any agreement reached by them as to a subcontract
 
 *727
 
 involving $60,000 would be incorporated in a written contract to be signed by all parties and secured by a performance bond. Fred Breaux’s own testimony corroborates that of the defendant’s witnesses on this point. Fie stated:
 

 ■ “Q. Now you know about how much money was involved in this contract that you claim that you had negotiated ? A. I do know that.
 

 “Q. About $60,000.00 was it not? A. Just about, yes.
 

 “Q. And wasn’t there anything said about you submitting a written proposal as to what you would do? A. Sure, they told me I had to furnish them with a performance bond.
 

 “Q.
 
 With a performance bond ? A. That’s right.
 

 “Q. You also would furnish a written proposal in the form of a letter or a contract as to what you would do? Wasn’t you supposed — A. Well we had understood each other what I was going to do.
 

 “Q. Well wasn’t it agreed Mr. Breaux that the contract would be submitted in writing and that you would finally end up signing a written contract? A. From the beginning, yes.
 

 “Q. From the beginning it was agreed that a written contract would be finally signed? A. From the beginning.
 

 “Q. Is that right? A. Yes.
 

 “Q. And there was never any written contract executed between you was there? A. Well they told me the morning of the bid when they was supposed — that was before they bid you see, we was supposed to write up an agreement, then when they came to Thibodaux that morning, they didn’t have time because they didn’t have any bid bond * *
 

 As far back as the year 1814 this court held that, where it has been agreed between the parties that an agreement shall be reduced to writing, the contract is not complete until it is written and signed by all the parties. Villere v. Brognier, 3 Mart., O.S., 326.
 

 In Fredericks v. Fasnacht, 30 La.Ann. 117, this court said:
 

 “ * * *
 
 It is elementary in our laiv, that where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed.
 
 The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that_ the contract shall be reduced to writing. In the first .class of cases the original verbal contract is in no manner impaired by the failure to
 
 *729
 
 ■carry out the subsequent agreement to put it in writing.
 
 In the second class of cases, the final consent is suspended; the contract is inchoate, incomplete, and it can not be enforced until it is signed by all the parties.
 
 Villéré v. Brognier, 3 Mart., O.S., 326, 349; Des Boulets v. Gravier, 1 Mart., N.S., 420, 421, 422; Bloeker v. Tillman, 4 La. 77, 80.”
 

 This principle of law has been consistently adhered to by this court ever since. See Evans v. Dudley Lumber Co., Inc., 164 La. 472, 114 So. 101, and authorities cited therein.
 

 Since the parties in the instant case intended from the beginning to reduce their negotiations to a written contract, neither the plaintiff nor the defendant was- bound until the contract was reduced to writing and signed by them. Therefore, even if all ■of the terms of the alleged contract between plaintiff and defendant had been verbally agreed upon, no valid contract would have existed between the parties because this case falls within the second class of cases discussed in Fredericks v. Fasnacht, supra, and therefore in this case the final consent of the parties was suspended until such time as the contract should be ■reduced to writing and signed by all the parties.
 

 Therefore, because the element of consent is lacking for the reasons set out above, it is obvious that plaintiff has not established the existence of a valid contract under Article 1779 of the Civil Code, and consequently cannot recover.
 

 Plaintiff cites and relies on the case of Delarosa v. Misuruca, 172 La. 190, 133 So. 441. In the Delarosa case it was not shown that the parties to the alleged contract had ever intended to reduce their agreement to writing, and thus it is clear that the Delarosa case is not pertinent' or controlling here.
 

 For the reasons assigned the judgment appealed from is affirmed at appellant’s costs.