EDWARDS, Judge.
Defendant appeals a judgment against him for $8,200 past due child support, *32 $1,063.68 past due medical expenses for the children, and $600 attorney’s fees, for a total of $9,863.68. We affirm.
When the Johnstons were divorced in 1979, Mrs. Johnston got custody of the couple’s two children, and Mr. Johnston was ordered to pay $400 per month child support, plus all reasonable medical, dental, and drug bills of the children. Mr. Johnston never paid the $400 per month as ordered by the court. Before the divorce judgment he had been voluntarily paying Mrs. Johnston $150 a month as child support, and after the judgment, he continued to pay only $150 per month.
On November 15, 1979, on a rule for arrearages the court ordered Mr. Johnston to pay $1,250 and held him in contempt, sentencing him to thirty days in the parish prison, but gave him until December 13, 1979, to purge himself of the contempt by taking some satisfactory steps toward payment of the arrearages. Mr. Johnston began making small payments each month toward the arrearages, and on December 13, 1979, when Mrs. Johnston did not appear in court, the contempt rule was passed. Thereafter Mr. Johnston paid varying amounts each month, from a high of $200 to a low of no payment at all.
In November 1982, Mrs. Johnston filed another rule for past due child support and contempt, and it is the judgment on this rule that Mr. Johnston now appeals. Mr. Johnston’s sole defense[1] is that after the first arrearages rule, he and Mrs. Johnston agreed that the arrearages owed would be $250 and that the amount of child support would be $100 per month per child, for a total of $200 per month.
Dubroc v. Dubroc, 388 So.2d 377 (La.1980), holds that conventional modifications of child support judgments are enforceable in some cases. We do not, however, reach the issue whether this is such a case; in contrast to Dubroc, no conventional modification was established in the instant case.
Since Mr. Johnston seeks to enforce this alleged agreement, he has the burden of proving that such an agreement was made. See LSA-C.C. art. 1831. Although the trial court gave neither oral nor written reasons for its judgment, it apparently concluded that Mr. Johnston had not proved such an agreement.
The record clearly reflects that the parties were indeed involved in negotiations toward the reduction of the amount of child support payments. Mrs. Johnston testified that she told Mr. Johnston on the telephone “that it could be [reduced], but it would have to be done legally, ... not just verbal or whatever.” In answer to the court’s question, Mrs. Johnston said that if Mr. Johnston had filed the papers in court to reduce child support to $200 per month plus all reasonable medical and dental expenses, she would have agreed to it. Nevertheless, Mrs. Johnston testified that she never actually made an agreement.
It is well settled that where parties intend to reduce their negotiations to writing, they are not bound until the contract is reduced to writing and signed by them. Even if all terms of the alleged contract have been verbally agreed upon, so long as it is a part of the bargain that the contract be reduced to writing, no valid contract exists until it is reduced to writing. Breaux Brothers Construction Co. v. Associated Contractors, Inc., 226 La. 720, 77 So.2d 17, 20 (La.1954); Boothe v. May, 425 So.2d 313, 315 (La.App.3d Cir.1982) cert. denied, 429 So.2d 146 (La.1983).
The record clearly shows that any agreement the parties might have made was dependent upon its being executed with some formality. According to Mrs. Johnston, that formality was the filing of the necessary papers in court and the court’s issuing a judgment reducing the *33 amount of child support. Unquestionably, this was never done. Furthermore there was never even any written stipulation signed by the parties. Thus, because the agreement was dependent on there being at least some formality, the agreement was never perfected, and accordingly, Mr. Johnston is still obligated to pay child support as ordered in the judgment. Mr. Johnston simply did not prove the existence of any agreement beyond the trial court’s child support award. Accordingly, the trial court was correct in rendering judgment against Mr. Johnston for arrearages based on the child support judgment.[2] Costs of this appeal are taxed against appellant.
AFFIRMED.

. Actually, Mr. Johnston also made the futile argument that the child support was automatically reduced when one of the children reached majority. The child support judgment of $400 per month was an in globo award, and it has been settled for almost ten years that an in globo award is not automatically reduced upon a child’s attaining majority. See Halcomb v. Halcomb, 352 So.2d 1013, 1016 (La.1977).

. Mr. Johnston does not contest the amount assessed against him for arrearages, and consequently we do not review the amount.