657 So.2d 409 (1995)
John E. CARTER, Plaintiff-Appellant,
v.
HUBER & HEARD, INC., John Huber and Peggy Caire, Defendant-Secondary Appellant.
No. 95-142.
Court of Appeal of Louisiana, Third Circuit.
May 31, 1995.
*410 Randal Paul McCann, Lafayette, for John E. Carter.
Timothy O'Dowd, Lake Charles, for Huber & Heard, Inc., John Huber and Peggy Caire.
Before KNOLL and SULLIVAN, JJ., and BROUILLETTE[*], J. Pro Tem.
HAROLD J. BROUILLETTE, Judge Pro Tem.
John E. Carter managed the Howard Johnson Motor Lodge in Lake Charles, Louisiana from December 1989 until May 1991. He was employed as a "turnaround" man, a *411 specialist who is employed on a temporary basis to build up profits preparatory to a sale of the business. In May 1991, when it appeared that the business would be sold, he terminated his employment and left Lake Charles to begin managing another motor lodge in Santa Fe, New Mexico. The sale of the Lake Charles facility did not go through and John Huber, Chairman of the Board of Huber & Heard, Inc., which owned the business, contacted Carter to discuss his return to Lake Charles to again manage the business. Carter's response to the proposal was that he would accept the job only with a two year written contract at a salary of $44,000 per annum. Huber agreed that the contract should be in writing and he had his attorney prepare a "rough draft" of an agreement and mail it to Carter. By Huber's instructions, the proposed agreement did not stipulate what would happen if the business was sold before expiration of the two year period because it was not his intention to continue the employment beyond the sale of the business.
About June 23, 1991, while the employment agreement was still being negotiated, Carter returned to Lake Charles and began managing the business. Revisions of the proposed agreement were drafted and negotiations continued but an employment contract was never executed by either party. In December 1991, the business was sold and Carter's employment was terminated. Carter received a check from Howard Johnson Motor Lodge in the amount of $10,000 which is referred to sometimes as a bonus and sometimes as a donation. The check was accepted without objection and there was no discussion of anything more being owed.
Approximately a year later, this suit was filed by Carter against the owner, Huber & Heard, Inc., and also against Huber individually and Peggy Caire, the president of the corporation, alleging that Carter suffered damages by reason of his detrimental reliance upon the misrepresentations of Huber that he would be employed for a two year period. He claims that this reliance caused him to give up his employment in New Mexico and return to Lake Charles. The defendants reconvened for a return of the $10,000 payment. The trial judge denied Carter's claim for damages and also denied the reconventional demand for return of the $10,000, finding that it was a voluntary payment and there was "no fraud to vitiate the donation." His detailed reasons for judgment are a part of the record. Both parties appealed. The defendants' brief does not assign error and their appeal on the issue of the return of the $10,000 is therefore considered abandoned.

DETRIMENTAL RELIANCE
Carter's action is based upon allegations that he suffered damages by reason of "reasonable reliance" upon misrepresentations by John Huber. His claim for damages is premised upon La.Civ.Code art. 1967 which incorporates detrimental reliance as a basis for enforceability of obligations. It provides:
Art. 1967. Cause defined; detrimental reliance
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The "Revision Comments" to Article 1967 provide that "[u]nder this Article, a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment." Recovery of damages therefore requires (a) the existence of a promise and (b) reasonable reliance on that promise to one's detriment. Morris v. People's Bank & Trust Co., 580 So.2d 1029 (La.App. 3 Cir.), writs denied 588 So.2d 101, 102 (La.1991), appeal after remand, 93-934 (La.App. 3 Cir. 7/27/94); 642 So.2d 225.
In order to determine whether Article 1967 was applicable, it was necessary for the trial judge to weigh the testimony of the witnesses. A reviewing court must give great weight to the factual conclusions of the *412 trier of fact; inferences of fact should not be disturbed where there is conflicting testimony. Suire v. Suire, 532 So.2d 201 (La.App. 3 Cir.1988); Till v. Delta School of Commerce, Inc., 487 So.2d 180 (La.App. 3 Cir.1986); Rosell v. ESCO, 549 So.2d 840 (La.1989). After hearing and evaluating the testimony, the trial judge found that there was no promise to pay plaintiff in the event of a sale of the property. He went even further to hold that if there was such a promise, the evidence failed to show that reliance on such a promise was reasonable. The following excerpts from the trial court's reasons relate to those requirements:
While the parties were still in negotiation, Carter made his move to leave his employment with Servico. He could not reasonably have considered that there was a promise outstanding at a time when the contract was still under negotiation.
* * * * * *
It is abundantly clear to the court that the defendants were not agreeing to pay Carter for the whole of his term in the event of a sale, because there was a specific instruction to the attorney to omit a provision on this issue. This issue was still in flux, does not constitute a promise, and action on a tentative understanding intended to be reduced to writing is, under these facts, unreasonable.
The existence of a promise and the reasonableness vel non of reliance on a promise if there was one, are essentially questions of fact. The trial court's findings of fact on those issues are fully supported by the evidence and will not be disturbed.

CONTEMPLATION OF A WRITTEN CONTRACT
In addition to the defense that the plaintiff failed to meet the requirements of detrimental reliance under La.Civ.Code art. 1967, the defendants assert that plaintiff's action falls under La.Civ.Code art. 1947 which provides:
Art. 1947. Form contemplated by parties.
When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form.
Although that article was new when added to the Civil Code in 1984, it did not change the previously established jurisprudential law. In Breaux Brothers Const. Co. v. Associated Contractors, 77 So.2d 17 (La. 1954), which is cited in the Revision Comments to Article 1947, the supreme court reviewed the case law dating back to 1814 holding that where it has been agreed between the parties that an agreement shall be reduced to writing, the contract is not complete until it is written and signed by all the parties. The testimony in Breaux Bros., Id., as in the present case, established that both parties planned to reduce their agreement to writing. In rejecting the plaintiff's effort to recover on the basis of an alleged oral contract, the supreme court held:
Since the parties in the instant case intended from the beginning to reduce their negotiations to a written contract, neither the plaintiff nor the defendant was bound until the contract was reduced to writing and signed by them.
 Breaux, 77 So.2d at 20.
Presumably the trial judge in this case found it unnecessary to discuss this issue in view of his having rejected the plaintiff's premise of detrimental reliance. However, his findings of fact strongly support this second defense as well. His reasons for judgment indicate specifically that Carter insisted upon a written contract and everyone agreed that a written contract was to be executed. Although there is conflicting testimony as to why, it is clear that no written contract was ever signed.
The factual findings of the trial court, in our opinion, place this dispute directly within the provisions of Article 1947 and the case law which preceded it. There is nothing in the record which shows that there was ever a change in the original understanding that the agreement was to be reduced to writing. We find that in addition to the plaintiff failing to meet the requirements of Article 1967 relating to detrimental reliance, that his cause of action fails under the provisions of Article 1947.
*413 For the foregoing reasons, the judgment of the district court is affirmed. Plaintiff-appellant is assessed with the cost of this appeal.
AFFIRMED.
NOTES
[*] Honorable Harold J. Brouillette participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.