812 So.2d 834 (2002)
JCD MARKETING COMPANY
v.
BASS HOTELS AND RESORTS, INC.
No. 2001-CA-1096.
Court of Appeal of Louisiana, Fourth Circuit.
March 6, 2002.
*836 Kent A. Lambert, Phelps Dunbar, LLP, New Orleans, LA, for Plaintiff/Appellant.
G. Bruce Parkerson, S. Michael Cooper, Plauche Maselli Landry & Parkerson, LLP, New Orleans, LA, for Defendants/Appellees.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY.
PATRICIA RIVET MURRAY, Judge.
This is a commercial litigation dispute. Plaintiff, JCD Marketing, Co., appeals the trial court's dismissal of its suit on motion for summary judgment by defendants, Bristol Management, L.P., and HI-CHAT LEM/IOWA NEW ORLEANS VENTURE. We affirm.

Factual and Procedural Background
Plaintiff, JCD, is in the business of creating and marketing tour packages for major sporting events, like the Super Bowl. In 1998, the media reported that the City of New Orleans was a possible site for the 2002 Super Bowl. On August 14, 1998, Beth Henderson,[1] JCD's event coordinator, contacted the Holiday Inn Chateau LeMoyne, a hotel located in the New Orleans French Quarter, which defendants own and operate (the "Hotel"). Ms. Henderson spoke with Heather Wortmann, the Hotel's sales manager, to inquire about room rates for January 25th through January 28th, 2002 (the "Reservation Dates"). Three days later, Ms. Henderson again contacted Ms. Wortmann to inquire about reserving a block of fifty rooms for the Reservation Dates; in hotel terminology that translates into 150 room nights fifty rooms time three nights. Ms. Henderson mentioned that JCD was reserving these room nights for an incentive meeting; she also sought to reserve the same number of room nights for the last week of January 2003 and for the first week of April 2003.
Confirming their conversation in writing, Ms. Wortmann faxed a letter to Ms. Henderson on August 17, 1988 (the "Proposal Letter"). In it, Ms. Wortmann expressed that she was pleased JCD was considering the Hotel for its 2002 and 2003 "Incentive Meetings."[2] Although the letter proposes for JCD's consideration certain rate arrangements based on a percentage of the then current 1998 rates, the letter has printed at the bottom the following restriction: "* * Rates are based on availability and may be subject to change.* *" This restriction is printed immediately below the printed statement that reads: "*Please request a contract to put rooms on reserve for your group.*"
On August 21, 1998, JCD requested a definite contract and a sales kit for all of the Reservation Dates. On August 31, 1998, the Hotel sent JCD a Booking Contract, which is a standard form the Hotel uses. The Booking Contract contains the following pertinent provisions: (i) "[t]he receipt and acceptance by the Hotel of the signed contract establishes this program on a `definite' status and represents your commitment to hold this program at the Holiday Inn-Chateau LeMoyne;" and (ii) "[u]ntil this document is countersigned by the [Hotel], all arrangements remain on a tentative basis."
On September 14, 1998, Ms. Henderson, on JCD's behalf, signed the Booking Contract and returned it to the Hotel with a *837 cover letter that stated: "[i]f everything is acceptable please countersign and Fed Ex back to us this week." JCD, however, made changes to two parts of the Booking Contract. First, JCD changed the number of room nights to read 150; the contract, apparently by mistake, provided for only 120 room nights. Second, JCD changed the Cancellation Clause to add a provision that it would incur no penalty if it cancelled for other than a force majuere event over 365 days before arrival. The latter was not an insignificant change.
At no time during their discussions did Ms. Henderson ever mention to Ms. Wortmann that JCD was attempting to reserve these 150 room nights for the 2002 Super Bowl. After JCD returned the Booking Contract, the Hotel realized that the Reservation Dates for the room block at issue coincided with the originally scheduled weekend of the 2002 Super Bowl.[3] Given this realization, Ms. Wortmann called Ms. Henderson and "[t]old her [the Hotel] could not sign contracts for 2002 ... due to the NFL ... citywide holds." For Super Bowl weekend, the Hotel was required to dedicate to the NFL a large segment of its rooms; particularly, in December 1997, the Hotel had entered into a definite room commitment with the NFL for 125 of its 171 rooms. On September 24, 1998, Ms. Wortmann also wrote JCD, informing that she "was not able to get a release on the dates requested and thus not able to cosign the [Booking Contract.]" This letter states that the "tentative block of rooms being held for January 25-28, 2002" has been released as of September 24, 1998. The Hotel thus never signed the Booking Contract.
After unsuccessfully seeking specific performance, JCD filed this suit on December 9, 1998, against the owner and operator of the Hotel, Bristol Management, L.P., and HI-CHAT LEM/IOWA NEW ORLEANS VENTURE. In its petition, JCD alleged a breach of contract claim as well as the following four noncontractual claims: (i) detrimental reliance, (ii) tortious interference with business relations, (iii) unfair trade practices, and (iv) unjust enrichment.[4]
JCD filed a motion for partial summary judgment on its breach of contract claim. Defendants responded by filing a cross-motion for summary judgment seeking dismissal of all JCD's claims.
In February 2001, the trial court rendered judgment denying JCD's motion and granting defendants' motion, dismissing all of JCD's claims with prejudice. In its reasons for judgment, the trial court simply stated that "[t]o have a claim, a contract must have been signed by the hotel. It wasn't. Plaintiff has no claim." This appeal followed.

Analysis
On appeal, the standard of review of a trial court's decision granting summary judgments is de novo. Smith v. Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. The questions we ask are the same as those the trial court asked; to wit: "whether there is any genuine issue of material fact, and whether the mover-appell[ee] is entitled to judgment as a matter of law." Id. In *838 answering these questions, we are guided by the Legislature's admonition that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action" and that "[t]he procedure is favored and shall be construed to accomplish these ends." La. C. Civ. Pro. art. 966(A)(2).
Turning to the case before us, JCD contends that summary judgment was improperly granted given the existence of genuine issues of material fact as to all of its claims. JCD's contractual claim is based on an alleged option to buy the 150 room nights for the Reservation Dates. JCD does not contend that a single document or event gave rise to that option; rather, JCD contends that that option was created as a result of the synergistic effect of four dealings between the parties; namely: (1) the Booking Contract provision giving JCD until December 1, 1988 to exercise its option; (2) the August 17, 1998 Proposal Letter; (3) the Hotel's December 1997 arrangement with the NFL; and (4) the Hotel's "tentative-to-definite" booking process, as explained in the deposition testimony of Ms. Wortmann and Anthony D'Angelo, the Hotel's former general manager. Taken together, JCD contends these dealing gave rise to a valid option, which it contends the Hotel breached in releasing the room nights. JCD further contends that the trial court's legal reasoning that a contract was required for it to prevail on its non-contractual claims was erroneous.
Countering, defendants frame the narrow issue presented on appeal as whether the Hotel ever made a binding commitment to JCD for the hotel rooms. Defendants argue that the trial court correctly concluded that there was no such binding contractual commitment. That conclusion, defendants argue, was fatal to all of JCD's claimscontractual and non-contractual. Citing La. C.C. art. 1947, discussed below, defendants further contend that the parties contemplated a written agreement and that until such agreement was executed neither was bound.

(i) Breach of contract
By definition, a breach of contract claim requires a contract. JCD characterizes the alleged contract in this case as an "option," which the Civil Code defines as "a contract whereby the parties agree that the offeror is bound by his offer for a specified period of time and that the offeree may accept within that time." La. C.C. art. 1933. More particularly, JCD characterizes the contract as an option to buy, which the Civil Code defines as "a contract whereby a party gives to another the right to accept an offer to sell ... a thing within a stipulated time." La. C.C. art. 2620. This article further provides that the option must set forth the thing and the price and must satisfy the same form requirements as the sale it contemplates.
Defendants argue that the Hotel never gave JCD a valid option to buy the 150 room nights at issue. Defendants stress JCD's own difficulty in pinpointing the time at which such option was given. Defendants further stress JCD's attempt to distinguish between the time at which the option was offeredAugust 17, 1998 when the Hotel faxed the letter stating "[p]lease request a contract to put rooms on reserve for your group"and the time at which the option became effectiveAugust 21, 1998 when JCD requested a Booking Contract. Defendants argue that an option is codally defined as something that one party "gives to another," La. C.C. art. 2620, and not as something that another acquires and that the comments to Article 2620 further state that an option without a definitive term is invalid. Finally, defendants contend that three essential elements *839 for an option contract are lacking: (I) price, (2) term, and (3) cause. We agree

(1) Price
Although, as JCD points out, both the Proposal Letter and the Booking Contract contained basically the same detailed provision addressing the calculation of the price for the room nights, the Proposal Letter had a disclaimer printed on the bottom of it that read: "* *Rates are based on availability and may be subject to change.* *" And, the Booking Contract was never executed, accepted, or signed by the Hotel. Hence, no price was ever agreed upon.

(2) Term
According to JCD, the option term was from September 17, 1998 through December 1, 1998. In support of that contention, JCD cites the Option provision of the Booking Contract, which states:
"These dates and rooms will be reserved on a first option basis until December 1, 1998, by which time the hotel asks that you return a signed copy of this agreement.... If we have not received your confirmation by this date, the hotel reserves the right to release all space for resale."
JCD's reliance on that isolated provision, however, is misplaced; the Hotel never executed, accepted, or signed the Booking Contract.

(3) Cause
In arguments before this court, a question was raised as to whether there was a valid cause for the option; stated otherwise, we questioned what consideration JCD gave the Hotel for the option. JCD responded that the Civil Code requires only a valid cause, not consideration. See La. C.C. art. 1967 (defining "cause" as "the reason why a party obligates himself.") JCD further responded that the cause was "the grantor's [Hotel's] hope to keep the prospective purchaser [JCD] `on the hook' by getting the purchaser's promise to consider an offer and decide within a fixed period whether to make the purchase." Defendants countered that the Hotel did not legally bind itself by stating that the rooms would be on a "tentative"uncertainhold and that the Hotel's "hope" that JCD would "consider" the "tentative" hold on the rooms was too tenuous and speculative to be a valid cause. We agree.
More importantly, as defendants contend, the parties clearly contemplated that a written agreement would be entered into before the arrangement between them would transform from a tentative to a definite booking of the room nights for the Reservation Dates. When, as here, the parties during their negotiations contemplate a certain form, La. C.C. art. 1947 applies. Article 1947 codifies the long recognized concept that when the parties "intended from the beginning to reduce their negotiations to a written contract, neither the plaintiff nor the defendant was bound until the contract was reduced to writing and signed by them." Breaux Bros. Constr. Co. v. Associated Contractors, 226 La. 720, 728, 77 So.2d 17, 20 (1954). Particularly, Article 1947 provides: "[w]hen, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." La. C.C. art. 1947.
Applying that concept here, the contemplated written agreement was the Booking Contract. Although the Hotel sent that contract to JCD on August 31, 1988, JCD's altering that contract, as a matter of law, was "[a]n acceptance not in accordance with the terms of the offer [and thus] is *840 deemed to be a counteroffer." La. C.C. art. 1943. The parties contemplated that the Booking Contract would be signed by both parties, yet the Hotel never signed it. It follows that no contract was ever entered into between the parties. Because we find that no contract existed between the Hotel and JCD, "none could be breached." Delta Testing and Inspection, Inc. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 96-2340, p. 4 (La.App. 4 Cir. 8/20/97), 699 So.2d 122, 125. We thus affirm the trial court's dismissal of JCD's contractual claim.

(ii) Non-contractual claims

(a) Detrimental Reliance
The concept of detrimental reliance is codified in La. C.C. art. 1967, which provides:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
La. C.C. art. 1967. Defendants contend that JCD cannot establish the requirement of a "promise" because it cannot establish that the Hotel agreed to reserve the room nights in question on a definite status. Conversely, JCD argues that the Hotel's promise was its assurance that it had 150 room nights available for the Reservation Days. Continuing, JCD argues that it reasonably relied on that promise in putting a tour package together and marketing that package to a third party.
In support of its position, JCD cites as analogous a contractor bid case in which the promise was the bid and detrimental reliance was applied to hold the subcontractor to his bid. Percy J. Matherne Contractor, Inc. v. Grinnell Fire Protection Sys. Co., 915 F.Supp. 818, 824 (M.D.La.1995). The factual scenario presented in the instant case, however, does not resemble the contractor bid cases. Explaining the contractor bid cases, a commentator notes that "[those] cases presented classic facts suggesting the need for protecting the general contractor from a careless and sometimes reckless subcontractor who felt no responsibility for a bid that his general contractor had incorporated into an overall bid." Shael Herman, Detrimental Reliance in Louisiana Law Past, Present, and Future (?): The Code Drafter's Perspective, 58 Tul. L.Rev. 707, 741 (1984); W.M. Heroman & Co. v. Saia Elec., Inc., 346 So.2d 827 (La.App. 1st Cir.1977)(holding subcontractor's bid irrevocable after general contractor relied upon it, incorporating it into his bid which owner accepted before subcontractor attempted to revoke bid.)
A commentator suggests that La. C.C. art. 1947 "sets a limit on an offeree's detrimental reliance" under Article 1967 to those instances in which the promise relied upon is in the form contemplated by the parties; a promise not in the form contemplated by the parties is presumptively unreasonable. Herman, supra at 738; see Carter v. Huber & Heard, Inc., 95-142, p. 6 (La.App. 3 Cir. 5/31/95), 657 So.2d 409, 412 (dismissing detrimental reliance claim based on La. C.C. art. 1947, reasoning that "everyone agreed that a written contract was to be executed"); see also La. C.C. art. 1967 (providing in last sentence that "[r]eliance on a gratuitous promise made without required formalities is not reasonable.") The commentator notes that this limit to the offeree's detrimental reliance *841 interest may be confined to transactions in which the promisor receives from the promisee no counter performance. Herman, supra at 738. Such is the case here; JCD gave no consideration for the alleged offer.
We agree with the defendants that Article 1947 is designed to prevent "the jilted party from making a [detrimental reliance] claim when the negotiation process breaks down." Applying those principles, the failure of the parties to reach the contemplated written agreement renders JCD's purported reliance on the Hotel's assurances regarding the availability of the room nights unreasonable. The trial court correctly dismissed JCD's detrimental reliance claim.

(b) Tortious interference with business relations
JCD argues that Louisiana jurisprudence has long recognized a cause of action for tortious interference with business relations, citing Junior Money Bags, Ltd. v. Segal, 970 F.2d 1, 10 (5th Cir.1992)(citing Graham v. St. Charles St. R. Co., 47 La. Ann. 1656, 18 So. 707 (1895)). Factually, JCD alleges that defendants, knowing JCD's purpose for acquiring the room nights, "purposefully sought to interfere with that business relationship by reneging on the [Hotel's] promise to supply JCD with the room nights needed for its tour package in the hope of recapturing the same room nights for re-sale at a higher profit."
Although this cause of action has an ancient vintage, Louisiana jurisprudence has viewed it with disfavor. Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 602 (5th Cir.1981). "Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort." George Denegre, Jr., et al., Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference, 45 Loy. L.Rev. 395, 401 (1999). "Simply put, in most cases in which a corporation is acting to maximize profits rather than to harm another businessit will be difficult for a plaintiff to produce evidence of bad faith or malicious intent." Id. at 404. Clearly, the alleged conduct JCD relies upon to support this cause of action is the very type of profit maximization conduct that has been held insufficient to satisfy the malice element. The trial court thus correctly dismissed this claim.

(c) Louisiana Unfair Trade Practices
JCD contends that defendants' conduct was "unfair" and "deceptive" and thus actionable under the Louisiana Unfair Trade Practices and Consumer Protection Act, La. R.S. 51:1401, et seq. ("LUTPA"). Particularly, JCD alleges that the Hotel misrepresented the availability of rooms and purposefully induced JCD to rely on those misrepresentations to ensure the Hotel's rooms were fully booked regardless of whether the Superbowl came to New Orleans in 2002. This unscrupulous conduct, JCD contends, entitles it to recover under the LUTPA.
The LUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. R.S. 51:1405. This court has defined a practice as unfair *842 "when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." Lilawanti Enterprises, Inc. v. Walden Book Co., 95-2048 (La.App. 4 Cir. 2/29/96), p. 6, 670 So.2d 558, 561. This broad definition requires a case-by-case determination of what is an unfair trade violation. Roustabouts, Inc. v. Homer, 447 So.2d 543, 548 (La.App. 1st Cir.1984).
Louisiana jurisprudence, however, has declined to find LUTPA violations when the alleged conduct was simply a "normal business relationship." Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1332 (5th Cir.1994); Monroe Medical Clinic, Inc. v. Hospital Corp. of America, 522 So.2d 1362, 1365 (La.App. 2d Cir.1988)(no LUTPA violation when conduct simply "the appropriate exercise of good business judgment and the proper workings of free enterprise.") The LUTPA has not been construed as forbidding "a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious." Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir.1993). In Lilawanti Enterprises, supra, for instance, we found no LUTPA violation given the evidence that the defendant's conduct was motivated by economic reasons. For the same reasons, we affirm the trial court's finding of no LUTPA violation in this case.

(d) Unjust enrichment
In the alternative, JCD claims that defendants' deceptive and unfair conduct entitles it to recover damages for unjust enrichment in the amount of the "inflated rates the Hotel has or will receive for these rooms over and above the standard rates at which [the Hotel] promised to sell those rooms to JCD." Unjust enrichment is codified in La. C.C. art. 2298, which provides: "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." La. C.C. art. 2298. The five elements required for an unjust enrichment claim are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. Baker v. Maclay Properties Co., 94-1529, p. 18 (La.1/17/95), 648 So.2d 888, 897.
JCD's unjust enrichment claim cannot succeed because it cannot establish an absence of justification for the enrichment, if any, of the Hotel. As defendants point out, the Hotel pays for the economic benefits of profiting off its own hotel rooms daily.[5]

Conclusion
For the foregoing reasons, we affirm the trial court judgment. Costs of this appeal are assessed to the appellant.
AFFIRMED.
NOTES
[1] Subsequently, Ms. Henderson was married; her married name is Mrs. Murphy.
[2] JCD does not dispute the Hotel's failure to provide any rooms to plaintiff for those dates in 2003.
[3] After this suit was filed the date of the 2002 Super Bowl was changed to February 3, 2002, a week later than originally scheduled. At oral argument before this court the issue was raised of whether the rescheduling of the Super Bowl rendered this matter moot. JCD contends it does not. We agree.
[4] JCD also asserted a claim for negligent and intentional misrepresentation. Given JCD's failure to brief that claim, we do not address it. Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4.
[5] JCD also assigns as error the trial court's denial of its motion for new trial. JCD's primary contention is that a new trial was warranted under La. C.C.P. art. 1972(2) based on "newly discovered evidence"a contract with a third-party for some of the room nights over the Reservation Datesor under La. C.C.P. art. 1973 based on "good ground[s]." Those same arguments were made to, and rejected by, the trial court. In denying the motion, the trial court implicitly found that such evidence would not have changed the result. We agree.