# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-38


ARROWHEAD CONTRACTORS, INC.

VERSUS

GRAYBAR ELECTRICAL COMPANY, INC.,  ET AL.


********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 72,631 B
HONORABLE JOHN C. FORD, DISTRICT JUDGE

********

## MARC T. AMY
## JUDGE

********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders and Marc T. Amy, Judges.

**AFFIRMED.**

**Thibodeaux, Chief Judge, dissents in part and assigns written reasons.**

Elvin C. Fontenot, Jr.
110 East Texas Street
Leesville, LA   71446
(337) 239-2684
COUNSEL FOR INTERVENOR/APPELLEE:
    Patrick Carr

Lamar M. Richardson, Jr.
110 Moore's Road
Mandeville, LA   70471
(985) 626-4414
COUNSEL FOR INTERVENOR/APPELLEE:
    Manilo V. Mendoza

**Robin D. Pittman**
**Baldwin, Haspel, Burke & Mayer, LLC**
**1100 Poydras Street, Suite 2200**
**New Orleans, LA   70163**
**(504) 585-7711**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Graybar Electrical Company, Inc.**

**Eugene J. Radcliff**
**Jonathan C. Augustine**
**Montgomery, Barnett, Brown, Read,**
**Hammond & Mintz, LLP**
**5353 Essen Lane, Suite 140**
**Baton Rouge, LA   70809**
**(225) 329-2800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
        **Arrowhead Contractors, Inc.**

AMY, Judge.

The plaintiff, a roofing subcontractor working at Fort Polk, alleged that the general contractor failed to pay as agreed and that it breached its contract by not supplying supervision at the site. The contractor placed the disputed funds into the registry of the court and contested the breach of contract claim. Two roofing businesses hired by the plaintiff intervened and asserted that they were not paid sums due. The subcontractor responded by filing a reconventional demand against the roofers. The trial court granted the contractor's motion for involuntary dismissal on the breach of contract claim. It also awarded the roofers' demands from the funds deposited with the court. The plaintiff appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

Graybar Electrical Company, Inc., a contractor working on housing units at Fort Polk, hired the plaintiff, Arrowhead Contractors, Inc., for roofing and painting portions of the work. Arrowhead, in turn, hired subcontractors to complete the work. Arrowhead filed this matter, alleging that Graybar breached its contract and that it refused to pay the full sums owed. Although Graybar contested the breach of contract claim, it deposited $41,251.72 into the court's registry. Graybar indicated that the figure "correspond[ed] to the amount Plaintiff's subcontractors and suppliers have asserted remains unpaid by Plaintiff to them."

Two of Arrowhead's roofing subcontractors, Patrick D. Carr d/b/a Carr Construction and Manlio V. Mendoza and/or Custom Quality Construction, LLC, filed petitions of intervention, seeking distributions from the sum in the court's registry. Arrowhead filed reconventional demands against Carr and Custom, alleging its entitlement to the deposit. Arrowhead claimed that Carr failed to satisfy its contract with Arrowhead, causing it to sustain repair costs, attorney fees, and court

costs. It further claimed damages for the loss of its contract with Graybar, which, it contends, was caused by Carr's breach. As for Custom, Arrowhead alleged that it failed to perform under its contract, again causing repair costs, attorney fees, and court costs. Arrowhead additionally sought damages associated with a mechanic's lien filed against it by Custom.

At the close of Arrowhead's case, the trial court granted Graybar's motion for involuntary dismissal. On the remainder of the claims, and after the close of evidence, the trial court found in favor of the intervenors.[1] It awarded $5,190.00 to Carr and

_____

[1] The trial court rendered the following written reasons for ruling:

> The court considers the testimony of the parties, evidentiary offerings and post-trial memoranda and finds it more probable than not that the written contract entered into by Mendoza (Custom Quality Construction) and Arrowhead was modified to correct certain deficiencies which were ostensibly caused by Arrowhead's supplier in delivering the wrong kind of roof flashing. The Court, therefore, concludes that the work billed for by Mendoza's company, Custom Quality Construction, reflecting the costs necessary to make the repairs. Therefore, the court awards Custom Quality Construction $14,205.47 plus court costs and legal interest from date of judicial demand. Per diem and travel expenses are not payable under the contract.

> Patrick Carr seeks payment for work alleged to have been performed under an oral contract.

> Carr entered into a verbal contract with Arrowhead's superintendent and according to Carr was told to invoice Arrowhead at the rate of $55.00 per square plus ten percent.

> Counsel for plaintiff argues that the Court should consider Carr's testimony unworthy because of impeachment and assume that Carr's contract was for the same amount as Custom Quality Construction's. Custom Quality Construction's contract was for $55.00 per square foot with no mention of ten percent.

> The Court considers all of these circumstances and particularly that each invoice submitted by Carr was clearly marked $55.00 per square plus ten percent. Invoices were consistently underpaid by Arrowhead for one reason or another but no mention of an overcharge of ten percent per square. There was no mention of a ten percent overcharge on checks written for payment, correspondence or pleadings. The Court therefore finds that it is more probably than not that Carr's contract was for $55.00 per square plus ten percent.

> Accordingly, the court awards Carr $5,190.00 plus costs of court and legal interest from date of judicial demand.

2

$14,205.47 to Custom from the court's registry. It ordered the remaining funds distributed to Arrowhead.

Arrowhead appeals, assigning the following as error:

(A)    The Trial Court legally erred by awarding monetary relief/damages to the intervenors, CQC and Carr, considering neither party put on a case-in-chief as a prerequisite to carrying their respective burdens of proof to show entitlement to the relief asserted in their petitions for intervention.

(B)    The Trial Court was manifestly erroneous and/or clearly wrong in disregarding the express and unambiguous language contained within the four corners of ACI's written subcontractor agreements, along with the undisputed corroborating testimony of several witnesses, to award CQC and Carr monetary relief and/or damages for expenses not authorized under said agreements.

(C)    The Trial Court was manifestly erroneous in granting Graybar's Motion for Involuntary Dismissal and refusing to adjudicate ACI's damages claim against Graybar, considering the undisputed witness testimony that Graybar and ACI agreed Graybar would have someone on-site to act as a liaison between ACI and Ft. Polk's Garrison Department to ensure ACI's work would pass government inspection.

**Discussion**

*Burden of Proof*

The trial encompassed Arrowhead's main demand against Graybar, Carr and Custom's intervention for entitlement to funds in the registry of the court, and Arrowhead's reconventional demand for the funds. The trial court explained that the claims would be heard together.[2] Carr and Custom questioned Arrowhead's witnesses presented in support of its main demand. At the close of Arrowhead's case, counsel for both intervenors explained that they did not present additional witnesses

---

[2] The trial court explained: "No, we're going to take the whole thing together. He's going to finish with this witness, I'm going to turn it over to Graybar, then you'll get a turn at the witness. That's the way we're going to do every witness." When asked whether he objected to this procedure, counsel for Arrowhead stated: "That's no problem with me and I have no objection, but, yes, Your Honor, absolutely."

3

as Arrowhead called their chosen witnesses in its case-in-chief. Arrowhead argues Carr and Custom could not have sustained their burdens of proof without calling their own witnesses.

Louisiana Code of Evidence Article 611(A) provides, in part:

> **A.     Control by court.** Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:
>
> (1)     Make the interrogation and presentation effective for the ascertainment of the truth;
>
> (2)     Avoid needless consumption of time[.]

The trial court explained that each party could question each of the witnesses called in the presentation of the three causes before it. The evidence relied upon by the intervenors to satisfy their burdens of proof was established at the time Arrowhead called its witnesses. To require the intervenors recall these witnesses and establish the same evidence again, as Arrowhead's argument seemingly demands, would obviously defeat the trial court's procedure which avoided needless consumption of time per Article 611(A)(2). Also, the record reflects that counsel for Arrowhead questioned the intervenors' representatives, Mr. Carr and Mr. Mendoza, on cross-examination. The witnesses were questioned by their own counsel on direct examination. Additionally, Carr presented a number of exhibits in addition to those of Arrowhead.

This assignment lacks merit.

*Contract with Custom*

Custom asserted in its intervention that its demand of $18,705.47 for unpaid invoices remained unpaid. Arrowhead denied Custom's entitlement to the funds in its reconventional demand, citing breach of contract, and alleging entitlement to additional sums due for the breach. As explained above, the trial court awarded Custom $14,205.47[3] from the deposited funds. It found that the contract between Custom and Arrowhead, which prescribed payment for the roofing work at "$55.00 per square," was "modified to correct certain deficiencies which were ostensibly caused by Arrowhead's supplier in delivering the wrong kind of roof flashing." In this assignment, Arrowhead contests the awarding of sums in excess of "$55.00 per square" as provided by the contract. It contends that Custom's "unauthorized changes" to the contract negated the parties' agreement.

Arrowhead's arguments fail on this latter point as the record supports the determination that the contract was modified, thereby taking resolution of the case outside of the four corners of the contract. It also supports a determination that Arrowhead consented to the modification.

As for consideration of evidence beyond the four corners of the contract, La.Civ.Code art. 1848, states:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or act under private signature. *Nevertheless, in the interest of justice, that evidence may be admitted to* prove such circumstances as a vice of consent, or a simulation, or *to prove that the written act was modified by a subsequent and valid oral agreement.*

(Emphasis added.)

---

[3] The trial court did not award that portion of Custom's invoice related to travel and per diem expenses, finding that Arrowhead had not agreed to pay these costs.

Mr. Mendoza, Custom's owner, explained that:

[E]veryday whatever happened[,] my point of contact was Mr. Mills[4] or Mr. Ed [Obet] so those were the people that I went to and when I explained to them this is going to take a lot of extra work and he says – I was instructed for whatever extra work we would do we would get paid. The original installation of the drip edge and step flashing we did it for free. But having to come back all the way from New Orleans – to drive four hours at 2 o'clock in the morning and come back here to fix the drip edge and spent many hours it incurred a lot of extra expenses for me and the person that came with me to fix the problems that we had to correct after we received original instructions.

Custom's counsel later questioned Mr. Mendoza as to his demand letter entered into evidence, stating: "And each of those expenditures were approved by Mr. Mills that – as you previously testified, is that correct?" Mr. Mendoza replied: "Yes, sir, he told me that I would be paid for reasonable expenses and that's what I put a price on each foot." Further, Arrowhead's owner, Charles Stuckey, confirmed that he told Mr. Mendoza that Mr. Mills and Mr. Obet had his authority to represent him as the owner at the site. Assessments of Mr. Mendoza's credibility regarding the guarantee of payment and the evaluation of the evidence urged by Arrowhead were within the purview of the trial court. *Rosell v. Esco*, 549 So.2d 840 (La. 1989). We find no manifest error in its determinations.

Neither is there merit in Arrowhead's assertion that the trial court erred in failing to award it damages for what it contends was Custom's substandard workmanship. It asserts that it suffered "consequential damages by losing its previously referenced roof contract at Ft. Polk." While Arrowhead presented evidence as to the quality of Custom's work, it lacked evidence on how the work

---

[4] Testimony indicated that James "Jimbo" Mills was Arrowhead's supervisor for a period of time during the project. Although Arrowhead attempted to call Mr. Mills as a witness, it was precluded from doing so by failing to timely list him as a potential witness.

jeopardized Arrowhead's contract with Graybar. The trial court's determination was not manifestly erroneous.

*Contract With Carr*

It was undisputed at trial that Arrowhead had no written contract with Carr as Carr did not sign and return the contract presented by Arrowhead. Arrowhead contended that, as with Custom, Carr was to be paid for $55.00 per square despite the absence of a written contract. Carr maintained that he was to be paid $55.00 per square plus ten percent. The trial court found the additional ten percent to be part of Carr's verbal contract with Arrowhead and awarded these additional sums invoiced by Carr. Arrowhead contests the award of the additional percentage.

Louisiana Civil Code Article 1846 provides:

> When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.

> If the price of value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.

After review, we find that the record supports the determination that Carr's verbal contract with Arrowhead provided for the additional ten percent invoiced.

On questioning, Mr. Carr explained:

Q.   And, so, when Mr. Mills hired you did you and he discuss anything about how you were to bill on these invoices?

A.   At first they was just desperate to have a roofer to roof out there.

Q.   So, what did you and he talk about as far as what you were going to charge for doing this roofing?

A.   We was going by what he had for the price we agreed on and then after I got started it all kind of changed up.

7

Q. All right. Well, on your invoices you marked $55 per square, is that right?

A. Yes.

Q. And you added ten percent to that?

A. Yes.

Q. And what was the ten percent for?

A. Well, we was having to hang fascia board, we'd have to primer paint it and we'd only use, like, ten foot of the board and the rest of it they wouldn't let us piece it. So, we had done did the work on that and the roof was so cut up and we was using so many shingles and there was a lot of waste with that and that's where I come up with the ten percent.

Q. And did you talk to Mr. Mills about that?

A. Yes, I did.

Q. And what did Mr. – did Mr. Mills authorize you to charge that ten percent?

A. He took my invoices and turned them in.

Q. That's who you gave the invoices to, didn't you?

A. Yes, it was.

Q. And he approved them for payment, didn't he?

A. Yes.

As the trial court observed, Carr's invoices, submitted into evidence, each reflect a charge of the additional ten percent. While a supervisor who replaced Mr. Mills, George Tierney, explained that he did not authorize the payment of an additional ten percent to Carr, he acknowledged that he did not hire or select Carr. In short, the trial court accepted Mr. Carr's testimony that he was authorized to charge an additional ten percent, Mr. Carr consistently included this additional percentage in the invoices, and Arrowhead personnel consistently submitted the invoices for payment. Given

8

these factors, we find no manifest error in the trial court's conclusion that sufficient corroborating circumstances existed to indicate that the parties contracted for the additional ten percent demanded.

Neither is there merit in Arrowhead's alternative argument that Carr and Arrowhead did not have a contract pursuant to La.Civ.Code art. 1947 and related jurisprudence. *See Carter v. Huber & Heard, Inc.*, 95-142 (La.App. 3 Cir. 5/31/95), 657 So.2d 409, *writ denied*, 95-1662 (La. 10/6/95), 661 So.2d 471. Article 1947 provides: "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." Arrowhead contends that, because Carr failed to sign and return the contract form, there was no enforceable contract. Article 1947 is not applicable to this situation. Rather, when Mr. Carr did not return the contract, Carr's work proceeded under Arrowhead's supervision, invoices were submitted, and sums, other than the contested additional ten percent were paid. Under these circumstances, it is clear that both parties contemplated that they were bound without the form initially proposed.

This assignment lacks merit.

*Involuntary Dismissal of Graybar*

Finally, Arrowhead contests the involuntary dismissal of its case against Graybar. Its demand alleged that Graybar failed to have a Graybar representative on site at all times who, according to Arrowhead, could have acted as a liaison between it and the Fort Polk quality control officials ultimately responsible for approving the roofing work. At trial, Arrowhead styled its claim as one for breach of contract and tort.

9

Louisiana Code of Civil Procedure Article 1672(B) provides for an involuntary dismissal as follows:

> B.  In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

A trial court's granting of an involuntary dismissal is not reversible absent manifest error. *Citgo Petroleum Corp. v. Yeargin, Inc.*, 95-1574 (La.App. 3 Cir. 2/19/97), 690 So.2d 154, *writ denied*, 97-1223 (La. 9/19/97), 701 So.2d 169, *writ denied*, 97-1245 (La. 9/19/97), 701 So.2d 170.

Arrowhead points to testimony from Mr. Tierney and Mr. Stuckey, indicating that Graybar informed Arrowhead at the commencement of Arrowhead's work that it would have a supervisor present to act as a liaison with Fort Polk officials. Arrowhead asserted that the supervisor could have ensured that the roofing work was acceptable at the time it was presented for inspection and approval.  It contends that this testimony should have been accepted by the trial court as it was uncontradicted. Arrowhead points to Mr. Tierney's testimony that he saw Graybar's supervisor only once during Arrowhead's six month presence at the facility.  Accordingly, it contends that Graybar's breach of contract was proven.

However, Arrowhead presented general statements and assumptions regarding the assurance of supervision.  It did not establish the parameters of any such supervision.  Accordingly, the trial court was not manifestly erroneous in finding insufficient evidence on this point.  Further, as recognized by the trial court,

Arrowhead did not support its claim with proof as to causation of damages.[5]  No evidence revealed how supervision would have ensured that Arrowhead's and its subcontractors' work would have more readily passed inspection and resulted in fewer incurred costs.  Although Arrowhead alleged that the supervision led to its ultimate loss of work at the site, it again lacked proof to establish this claim.  Therefore, the trial court's granting of the motion for involuntary dismissal was not manifestly erroneous.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.  All costs of this appeal are assessed to the appellant, Arrowhead Contractors, Inc.

**AFFIRMED.**

---

[5]  In granting the involuntary dismissal, the trial court remarked:

> [T]here was never any causation.  Even if I were to find and stretch it and say, okay, they had a duty because to have somebody there because of this big meeting that they had when they awarded the bids, even if I were to find duty that they did not have anybody there or that they didn't come and help them when they cried out for support.  I still can't find where that caused any damage to Arrowhead because Arrowhead, apparently, had competent personnel and Mr. Tierney seems to be extremely well accomplished in the fields of construction and there's no reason why he would have needed the general contractor's man to come help him deal with this problem – inspector, we had quality control man from Fort Polk.  That's where the problem was.

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-38

**ARROWHEAD CONTRACTORS, INC.**

**VERSUS**

**GRAYBAR ELECTRICAL COMPANY, INC., ET AL.**

**THIBODEAUX, Chief Judge, dissenting in part.**

I disagree that the award of $14,205.47 to Custom was proven with sufficient competent evidence. Custom's own representative/owner, Mr. Mendoza, himself agreed that these charges were beyond the four corners of the agreement. The written contract between Arrowhead and Custom did not modify any oral representations worthy of any credible cognizance. Further, Mr. Mendoza admitted that the written agreement did not authorize those amounts of money for the additional charges.

For the foregoing reasons, I respectfully dissent in part.