(60 South. 368.)

No. 19,181.

HART v. TREMONT LUMBER CO.

(Dec. 2, 1912. On Application for Rehearing, Jan. 6, 1913.)

*(Syllabus by the Court.)*

1. CONTRACTS (§ 32*)—FORMER REQUISITES—NECESSITY FOR WRITING.

As plaintiff was permitted to work under a verbal contract, which the defendant apparently accepted, because it did not stop plaintiff even when he refused to sign the written one which it tendered him, it cannot now escape the obligation of this verbal contract, and is responsible in damages for its breach.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 159; Dec. Dig. § 32.*]

2. DAMAGES (§ 40*)—MEASURE—BREACH OF CONTRACT.

The plaintiff is entitled to damages equal to the profits which he would have realized had he been permitted to carry out his contract.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 72–88; Dec. Dig. § 40.*]

Appeal from Fourth Judicial District Court, Parish of Lincoln; R. B. Dawkins, Judge.

Action by Ed. Hart against the Tremont Lumber Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Stubbs, Russell & Theus, of Munroe, for appellant. Wimberly & Reeves, of Shreveport, for appellee.

BREAUX, C. J. Plaintiff claims an amount of $4,800, due him, he alleged, on a verbal contract entered into with the defendant company.

Plaintiff avers that, in accordance with this contract, he was to haul 5,000,000 feet of timber—i. e., all the pine timber on land fully described in plaintiff's petition—at $1.25 per thousand. He alleged that he began hauling and continued hauling for about six weeks before the defendant company forwarded to him a written contract to be signed by him containing stipulations that were not in the verbal contract. The plaintiff erased these added stipulations, signed the contract less the words erased, and forwarded it back to the defendant company for its signature.

The defendant did not sign the written contract, nor did it promptly return it to plaintiff.

Plaintiff claims that, if he had been permitted to haul the 5,000,000 feet as per verbal contract, he would have made a profit of 96 cents per thousand feet; that he is entitled to the contract price less 29 cents per thousand on the 5,000,000 feet, equal to $4,-800, as above mentioned.

Plaintiff also claims $1,000 for punitive damages on the ground that defendant actively and maliciously violated the verbal contract.

Defendant in its answer denies liability, and denies that there ever was any such contract as alleged by plaintiff.

Plaintiff interposed a plea of estoppel by reason of the fact that defendant dealt with him under the contract, paid him and entered into the contract, that the agent of defendant who made the agreement with plaintiff made some preparations for log hauling by plaintiff by preparing roadways and tramways, and that in this respect and others there was a repeated execution of the contract.

Plaintiff had a large outfit for hauling logs. It was only after a number of days and even weeks that he had been at work that he was informed that his work was no longer needed; that the mill had broken down, and that there was no necessity for other logs; that was the only reason given at the time for stopping plaintiff from continuing in executing the contract.

According to the printed form, which plaintiff signed after having erased the words "sound" in the one sentence, and the words "the contract may be canceled at any time by the party of the second part if the services of the party of the first part are not satisfactory," the plaintiff was to haul 1,750 feet monthly, and this much was due by plaintiff as we gather from the testimony. Plaintiff swore that he erased the printed words in order to make the written contract conform to the verbal contract.

After the contract had been signed by plaintiff and forwarded to the defendant, it was kept in the defendant company's safe for some time without objection, and the plaintiff continued to work.

Plaintiff continued to haul logs from the first days of January until he was stopped by defendant.

To go back a few days in matter of this contract: One of defendant's employés, some eight or ten days after the modified contract had been signed and forwarded to the defendant company, called on the plaintiff, and said to him that the company objected to the contract. It does not seem, however, that the employé insisted upon the plaintiff signing the contract which the defendant company wanted to have signed, instead of the contract signed by plaintiff, and forwarded to the defendant. The matter seems to have been passed over entirely.

We will state here that it appears that this is the first contract which the defendant undertook to have signed by one of its log hauling men. Another log hauler was employed about the same time, and nothing was said about this written contract or the necessity of signing a similar contract. His, this employé's, contract was verbal.

[1] In answer to the proposition that a written contract was necessary, we will state, in general terms, by way of illustration, where there is a sale of real property or an interest in land within the meaning of the statute, generally it cannot be enforced, unless an agreement or some memorandum be written and signed. The same is true of personal property, where it is agreed that nothing shall be done before a written agreement has been signed.

Here there was no written agreement, but the work was performed in accordance with the verbal agreement, as we have seen. If anything was said at the time of entering into the contract about a written contract, it was not insisted that such a contract must be signed before beginning and continuing with the work.

Corporations have no advantage over individuals. If an individual accepts work for a considerable time without insisting upon the signature to the written contract (if there was such an agreement), he cannot very well be heard to enforce the written agreement as if it had been signed.

The log foreman of the defendant company, we have seen, had entered into the con-

tract as representative of defendant, as appears by the following:

"Q. You made a positive agreement with him that he was to haul the timber on this territory as pointed out at $1.25 per thousand feet?
"A. Yes, sir.
"Q. Now you directed him to work upon that haul as per that agreement?
"A. Yes, sir.
"Q. You made this agreement with Mr. Hart, and he went to work hauling, carrying out the contract, and he carried it out as long as you stated?
"A. Yes, sir."

There was tacit approval to such an extent that defendant cannot be heard to deny the contract, and cannot escape all liability because it peremptorily discharged, without cause, the plaintiff, and put an end to his work.

[2] We will next take up for decision the question of the amount to which plaintiff is entitled.

The amount due is equal to the profits that plaintiff would have realized had he been permitted to haul the timber on the land described according to the contract.

Witnesses vary in their estimate of the amount.

Considering that there was performance equal to half of the contract, the amount heretofore allowed in the district court has every appearance of being reasonable.

In estimating the profits under a contract, the rainy days, the holidays, the loss of time, and the disappointments possible have to be considered.

We are of the opinion that the sum of $2,250, with interest, as allowed, should not be increased nor reduced.

For reasons stated, the judgment is affirmed at appellant's costs.

PROVOSTY, J., concurs in the decree.

On Application for Rehearing.

PER CURIAM. There is error in the judgment below in allowing interest on the award of damages from judicial demand instead of from the date of judgment.

It is, therefore, ordered that said judgment and our decree herein be amended by allowing interest from October 13, 1911, instead of from judicial demand, and that the plaintiff pay costs of appeal.

It is further ordered that our decree as thus amended be reinstated and made the final judgment of this court, and that the application for a rehearing in all other respects be refused.