666 So.2d 1282 (1996)
PDT, INC., et al, Plaintiffs-Appellees,
v.
Raymond L. BELL, Jr. d/b/a Raymond Bell Contractors, Defendant-Appellant.
No. 27,930-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
Rehearing Denied February 22, 1996.
*1283 John W. Montgomery, Minden, for Appellant.
Deborah Shea Baukman, Shreveport, for Appellees.
Before WILLIAMS and STEWART, JJ., and CLARK, J., Pro Tem.
WILLIAMS, Judge.
Defendant, Raymond L. Bell, Jr. ("Bell"), d/b/a Raymond Bell Contractors, appeals a *1284 judgment rendered in favor of the plaintiffs, PDT, Inc. ("PDT") and its worker's compensation insurer, Highlands Insurance Company ("Highlands"), finding that Bell must indemnify Highlands under LSA-R.S. 23:1061, for benefits paid to Bell's employee. For the reasons expressed, we reverse.

FACTS
In January 1985, Bell entered into an agreement with Jim Mier, sole shareholder of PDT, Inc. to serve as PDT's subcontractor to backfill pits at an oil well site near Carthage, Texas. Southwestern Electric and Power Company had hired PDT as the contractor for the job. During the completion of the backfill operation, Raymond Bell, Sr., a Raymond Bell Contractors employee, was injured.
Highlands paid the injured employee worker's compensation benefits. Subsequently, PDT and Highlands filed suit against Bell, pursuant to LSA-R.S. 23:1061[1], claiming indemnity from Bell for all benefits paid to the injured employee. Bell defended the suit alleging an agreement between PDT and himself whereby PDT agreed to provide worker's compensation insurance for Bell's employees. Following a bench trial, the trial court ruled as follows: 1) agreements designating the contractor as the provider of worker's compensation insurance for the subcontractor's employees must be in writing; 2) no such agreement existed between Bell and PDT, and therefore, PDT and Highlands had not contractually waived their statutory right to indemnity for the worker's compensation benefits paid. The trial court concluded that under LSA-R.S. 23:1061, Bell was liable to Highlands for worker's compensation benefits paid to Bell's injured employee. Bell appeals.

DISCUSSION
Bell contends that the trial court's judgment is manifestly erroneous because of: 1) its conclusion that a contract to provide worker's compensation insurance has to be in writing and 2) its failure to find that Bell had proved by a preponderance of the evidence that he and PDT had agreed that PDT would provide worker's compensation insurance to cover Bell's employees. We agree.
The trial court erred in finding that the agreement between Bell and PDT, designating PDT as worker's compensation insurance provider for Bell's employees, had to be in writing. LSA-C.C. Art. 1927 provides that unless the law requires a certain formality for the intended contract, offer and acceptance (formation of the contract) may be made orally, in writing, or by action or inaction that is clearly indicative of consent. This court is unaware of any provision of law that mandates that an agreement to provide worker's compensation insurance must be in writing. Therefore, in the absence of a statutory writing requirement, such a contract may be made orally.
LSA-R.S. 23:1061 provides that a principal contractor is liable to pay compensation to anyone employed by a subcontractor as though the employee was immediately employed by the principal. It also provides that the principal shall be entitled to indemnity from any other person, who, independent of the statute, would be liable to pay compensation to the employee, and that the principal shall have a cause of action for that indemnification. However, it is well settled that the principal contractor may agree to provide worker's compensation insurance for the benefit of the subcontractor's employees, and if he so agrees, the statutory right to indemnity is not available to him. See Andrews v. Spearsville Timber Company, Inc., 343 So.2d 1008 (La.1977), Stevens v. Mitchell, 234 La. 977, 102 So.2d 237 (1958).
Here, Bell was required to prove the existence of PDT's contractual obligation to provide worker's compensation insurance for Bell's employees by the preponderance of the evidence. LSA-C.C. Art. 1831, Woodard v. Felts, 573 So.2d 1312 (La.App.2d Cir.1991). Essentially, Bell had to prove that considering the evidence as a whole, the existence of an agreement that PDT was to provide worker's compensation insurance for Bell's employees *1285 was more probable than its non-existence. See Woodard, supra. We find that the trial judge erred in concluding that Bell had not met this burden of proof.
This court cannot set a side a trial court's factual findings unless the trial court's findings constitute "manifest error" or they are "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The two-part test for reversal is: 1) The court of appeal must find from the record that the trial court did not have a reasonable factual basis for its finding and 2) the court of appeal must find, from the record, that the trial court's finding is clearly wrong. Id. The testimony presented at trial supports a finding that the trial court's conclusions were clearly wrong.
Bell testified that the agreement in question was made at the job site near Carthage, Texas. He testified that his normal procedure for accepting a job was to go to potential job sites with clients prior to accepting a job, so that the client could show him what was to be done, and so he could give the client an estimate. He stated that the reason he and Mier entered into the worker's compensation agreement was to bring the price down to one Mier could afford. Bell testified that PDT's employee Dennis Holland, and Bell's employee Terry Humphrey, were also present when the agreement was reached.
Bell also testified that he did not always carry worker's compensation insurance, but that he carried it on and off as he needed it. Furthermore, he testified that PDT had carried the worker's compensation insurance each time Raymond Bell Contractors had done a job for the corporation. The invoices introduced into evidence show a total of four jobs Bell had completed for PDT.
Terry Humphrey, a Bell employee, testified that during the time he worked for Bell, he could recall that they handled several jobs for PDT, and that PDT supplied the worker's compensation insurance on all the jobs. Humphrey corroborated Bell's testimony concerning the meeting at which the alleged agreement was made.
Dennis Holland testified that he was an employee of PDT at the time of the accident and that he and Terry Humphrey were present when Mier and Bell agreed that PDT would obtain the worker's compensation insurance for Bell's employees. Holland had previously made this same statement in affidavit form prior to the trial. Counsel for PDT and Highlands attempted to impeach Holland with a prior recorded statement made to the insurance adjuster immediately after the accident. During that interview, Holland stated that he did not know until after the accident that PDT had insurance and Bell did not. However, Holland explained that he intended to say that he did not recall the agreement between Mier and Bell until after the accident.
Mier, on the other hand, testified that he had not met with Bell on the job site for this particular job, and that he was not present at a meeting with Humphrey and Holland. He stated that after Bell went out to look at the site, Bell came to his home to discuss the job. He further testified that Bell had always followed this procedure when they have worked on jobs together. Mier also testified that he and Bell discussed only the price for the job.
Initially, Mier testified that he did not remember the agreement concerning worker's compensation insurance. However, he later testified that he did not reach an agreement with Bell for insurance. Mier also maintained that he had never been at a meeting where Terry Humphrey was present, emphatically denying that he had ever met Humphrey. Although Mier had testified earlier that he had never been present at a meeting with Bell and Holland, he later admitted that Holland may have been present at a meeting between himself and Bell, but that Holland was never present for the agreements. Mier later conceded that Holland may have been present at the job site when the men first discussed the sub-contracting job. Mier also testified that at that time, that he did not discuss worker's compensation or insurance certificates with anyone other than Bell. He also admitted that he had previously visited job sites with Bell prior to reaching job agreements.
*1286 Lastly, Mier provided the court with invoices for all the jobs that Bell had performed for him. They were all completed in either 1984, or 1985. Mier testified that Bell had provided him with a certificate of insurance in 1984 as well as with subsequent paperwork showing that the insurance was kept current. He did not provide the court with any insurance documents. When asked by Bell's counsel why he did not have the insurance documents, Mier stated that his custom was to throw away all his paperwork after five years. This suit for indemnity was filed in 1986 and the worker's compensation benefits were commenced in 1985. It is questionable that Mier would have destroyed these one to two year old documents which proved that Bell usually provided worker's compensation for its employees.
After a thorough review of the record and the testimony of all the witnesses, it is clear that the trial judge was clearly wrong in his conclusion that no contract had been formed. The judge stated in his reasons for judgment that the testimony of the witnesses had been impugned, specifically that of Holland. However, the record shows that Holland sufficiently explained the prior statement. Even if one were to discount the testimony given by Holland, the testimony of the other witnesses corroborates Bell's version of the job-site meeting and PDT's agreement to provide worker's compensation insurance. On the other hand, Mier's testimony was fraught with contradictions. In contrast to his earlier testimony, Mier admitted that he had gone out to view job sites with Bell prior to reaching an agreement about a job. He implies that he met with Bell concerning this particular job, and he also admitted that at least Holland may have been present at the meeting or meetings. His responses also indicate that there were more agreements reached concerning this job than the payment to be received for work to be performed.
Clearly, Mier's testimony is that which is most impugned, and where a witness' story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness' story, the appellate court may find manifest error or clear wrongness even if the trial court made its finding based on a credibility determination. See Rosell, supra.
Apparently, trial court was misled by its erroneous conclusion that the contract had to be in writing. However, it is clear from the testimony that the parties agreed that PDT would provide the worker's compensation insurance for Bell's employees. Thus, PDT and Highlands are not entitled to indemnity from Bell.

CONCLUSION
For the foregoing reasons, the trial court's decision is reversed and costs are assessed against plaintiffs, PDT, Inc. and Highlands Insurance Company.
REVERSED.

APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, WILLIAMS and STEWART, JJ., and CLARK, J., Pro Tem.
Rehearing denied.
NOTES
[1] The statute provides that a principal may seek indemnification from an employee's direct employer for worker's compensation benefits paid by the principal.