756 So.2d 1288 (2000)
James O'GLEE and Karen O'Glee, Plaintiffs/Defendants in Reconvention/Appellees,
v.
Mike WHITLOW and Jonathan Orr, Defendants/Plaintiffs in Reconvention/Appellants.
No. 32,955-CA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2000.
*1289 Tommy K. Cryer, Shreveport, Counsel for Appellants.
*1290 Powell & Pittard by R. Lane Pittard, Shreveport, Counsel for Appellees.
Before NORRIS, WILLIAMS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from an agreement to purchase and sell the Cola Café ("the cafe") located in Springhill, Louisiana. The trial court entered a judgment awarding the sellers, James and Karen O'Glee ("the O'Glees"), the original sales price of the cafe in the amount of $41,500, less credit for sums paid by the buyers, Mike Whitlow and Jonathan Orr (collectively referred to herein as "Buyers"[1]), together with legal interest from judicial demand. Accordingly, the trial court denied the Buyers' reconventional demand for return of monies paid pursuant to an anticipated sale of the cafe. Buyers appeal, assigning four errors which essentially concern the issue of whether the sale of the cafe was perfected. Since we find that the sale of the cafe was perfected, we affirm the judgment of the trial court.

FACTS
During October and November 1996, the O'Glees and Mr. Whitlow, who were long-time friends, had discussions about the O'Glees' selling the cafe to Mr. Whitlow. On November 10, 1996, the parties agreed on a purchase price.[2] The parties also agreed on the terms of payment in accordance with a document drafted by Mr. Whitlow ("Buyers' document") which contained an amortization schedule. The Buyers' document was entitled "Promissory Note," in Mr. Whitlow's handwriting, and provided an amortization schedule for payment of $34,500 (the purchase price of $41,500 less a down payment of $7,000) at an interest rate of ten percent per annum over a term of 60 months. On the second page of the Buyers' document, immediately following the payment schedule, Mr. Whitlow wrote:

Payable to: James O'Glee
Payable by: Mike Whitlow 2/3 (67%)
 Jonathan Orr 1/3 (33%)
Date: 11/10/96
For: Cola CaféFurniture, Fixtures,
 Equipment, etc.
 (signed) Mike Whitlow
 (signed) Jonathan Orr

Additionally, there was testimony by both Mr. O'Glee and Mr. Whitlow that the parties had agreed that "sales documents" would be drafted regarding the sale of the cafe. There is conflicting evidence, however, as to whom the parties agreed would draft such documents and when the documents would be prepared. In any event, in October 1996, the O'Glees turned possession of the cafe over to the Buyers who began operating the cafe and making monthly payments in accordance with the amortization schedule as set forth in the Buyers' document. During the operation of the cafe, Mr. Whitlow sold inventory of the cafe to third parties, transferred fixtures and certain menu items to another restaurant owned and operated by him in Springhill and made rental payments for the premises.
In May 1997, however, the Buyers ceased operation of the cafe and ceased making payments to the O'Glees. The Buyers contend that the cessation of payments was because there had been no paperwork *1291 produced regarding the sale. Mr. Whitlow testified that he continued to make rental payments, however, in order to preserve the lease on the premises.
In December 1997, after many months of default, the O'Glees made demand for payment on Mr. Whitlow, who refused to resume payments until the sale agreement was reduced to writing. The O'Glees retained an attorney and, on February 4, 1998, provided a proposed set of documents to Mr. Whitlow. At the same time he received the paperwork, however, Mr. Whitlow claims that he learned for the first time that there was no lease on the premises and that the O'Glees had been operating under a month-to-month arrangement with the owner of the premises, Kenyan Enterprises. Since he had been led to believe that there was a lease on the premises, in the absence of which the Buyers would not have bought the cafe, Mr. Whitlow refused to proceed with the sale and the O'Glees filed the instant suit. As previously stated, the Buyers reconvened. Concluding that a sale had been perfected, the trial court rendered judgment in favor of the O'Glees entitling them to collect from the Buyers the balance of the original purchase price. The Buyers' reconventional demand was denied.

DISCUSSION
It is well settled that a court of appeal may not set aside a trial court's factual finding in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). Furthermore, a determination as to the existence of a contract is a finding of fact which may not be disturbed on appeal unless it is clearly wrong. PDT, Inc. v. Bell, 27,930 (La.App.2d Cir.1/24/96), 666 So.2d 1282, writ denied, 96-0774 (La.5/3/96), 672 So.2d 688.
Where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel its own evaluations and inferences are equally reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Harrison v. Gore, 27,254 (La.App.2d Cir.8/23/95), 660 So.2d 563, writ denied, 95-2347 (La.12/8/95), 664 So.2d 426; Gardner v. McDonald, 27,303 (La.App.2d Cir.8/23/95), 660 So.2d 107, writ denied, 95-2349 (La.12/15/95), 664 So.2d 453. Likewise, reasonable evaluations of credibility should not be disturbed on review. Marshall v. Caddo Parish School Board, 32,373 (La.App.2d Cir.10/29/99), 743 So.2d 943. It is the factfinder's duty to weigh credibility and accept or reject all or part of a witness' testimony. Id. Furthermore, when findings of fact are based on determinations of credibility of witnesses, the manifest error-clearly wrong standard mandates great deference to the determinations made by the trial court. West v. Williams, 30,842 (La.App.2d Cir.8/19/98), 717 So.2d 1224. If the trial court's findings are reasonable when the record is reviewed in its entirety, the appellate court may not reverse them. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
La. C.C. art. 2439 provides the requisites necessary for the perfection of a sale: (1) the thing; (2) the price; and (3) the consent of the parties. After careful review of the testimony and documentary evidence, we find that the elements of a valid sale were present and that the trial court's conclusion that a sale was perfected was not manifestly erroneous.
First, clearly the parties agreed on the thingthe assets of the cafe which are described in the Buyers' document as furniture, fixtures, equipment, etc. Second, the agreement as to price is equally clear from the Buyers' document. The sales price was $41,500. Mr. Whitlow paid a down payment of $7,000 and made payments according to the amortization schedule prepared by him representing the balance *1292 owed of $34,500 at ten percent per annum over a term of 60 months.
It is the third element, consent, that the Buyers maintain is lacking. They argue that consent was "suspended" pending the agreement on the details of the sale and the reduction of that agreement to a written form acceptable to and executed by all parties. Acknowledging that both parties testified that they had reached a general agreement regarding the sale and agreed that the details would be worked out, the Buyers argue that the details were never worked out and the paperwork never done; therefore, no sale was perfected.
In support of their position, the Buyers cite Breaux Bros. Construction Co. v. Associated Contractors, Inc., 77 So.2d 17, 226 La. 720 (1954), which established two classes of cases involving verbal agreements of sale. In the first class of cases, the verbal agreement is a complete verbal contract which is not impaired by the failure to subsequently reduce the agreement to writing. In the second class, however, it is part of the bargain that the agreement be reduced to writing and final consent is suspended and the contract is incomplete and unenforceable until it is reduced to a written contract and signed by all parties. The Buyers argue that the instant case falls squarely into the second class of cases described above. They assert that the trial court's finding that the parties' intention to reduce the original sales agreement to writing was subsequent to the original sales agreement is totally unsupported by the evidence. They contend that numerous details were deferred by the parties to be worked out in the final paperwork, including exact inventory, stores, effective date, responsibility for accounts payable and receivable, ad valorem taxes, sales taxes and trade name rights. According to the Buyers, therefore, there was no consent to the sale and, thus, no perfection.
The O'Glees, however, maintain that the Buyers' reliance on Breaux Bros., supra, is misplaced and that the signatures on the Buyers' document, coupled with the conduct of Mr. Whitlow in operating the cafe as if it were his own, evidences the Buyers' consent to the sale. We agree.
While the holding in Breaux Bros., supra, may seem applicable on first impression, we find the case sub judice to be factually distinguishable. The plaintiff in Breaux Bros. sued for breach of an oral contract which the plaintiff allegedly had with the defendant to move dirt from drainage canals. The supreme court found that the element lacking in that case was an agreement as to price. The fact we find significant from Breaux Bros. is that the work on the canals had not commenced at the time of the contract dispute. Similarly, in Baldwin v. Bass, 28,984 (La.App.2d Cir.12/11/96), 685 So.2d 436, writ denied, 97-0111 (La.3/7/97), 690 So.2d 20, which is also cited by the Buyers, a panel of this court applied the rule from Breaux Bros. to find no enforceable contract where the evidence showed that the parties had agreed to reduce their agreement to writing before Bass would begin construction.
In the instant case, unlike Breaux Bros. and Baldwin, the Buyers began performance immediately. Specifically, they began making payments according to the amortization schedule in the Buyers' document and made rental payments for the premises. The Buyers operated the cafe and even sold some of the assets of the cafe to third parties. Where the parties substantially comply with an oral agreement, neither one can later back out on grounds that they failed to execute a writing. See Southern Scrap Material Co. v. Commercial Scrap Materials Corp., 239 La. 958, 120 So.2d 491 (1960). Our supreme court has also stated that, in general terms, where there is a sale of personal *1293 property, it cannot be enforced where it is agreed that nothing shall be done before a written agreement has been signed. Hart v. Tremont Lumber Co., 131 La. 847, 60 So. 368 (1912). In Hart, the defendant was not allowed to escape liability under a verbal contract to haul logs where the work had been performed in accordance with the verbal agreement. Furthermore, a contract may be consented to by action or inaction. La. C.C. art.1927. We find that the Buyers' operation of the cafe for several months and other actions which suggest consent and ownership of the cafe constitute substantial performance under the agreement confected between the Buyers and the O'Glees. As such, the Buyers may not now withdraw because the agreement was not reduced to writing.
Moreover, we find disconcerting Mr. Whitlow's testimony that he operated the cafe as if it were his own; and, yet, he now claims that the sale was never perfected. Mr. Whitlow testified as follows:
Q: Okay. Now the time that you walked into the restaurant and started running it, did you consider that to be, for all practical purposes, your restaurant?
A: Yes.
It is clear that Mr. Whitlow was a seasoned businessman, experienced in restaurant acquisitions and operations. We believe that had he not considered the sale perfected, he would not have operated the business in such a way that so clearly indicated ownership.
Alternatively, the Buyers argue that, even if this court finds consent to the sale, such consent was vitiated by Mr. Whitlow's mistaken belief regarding the existence of a lease agreement on the premises which housed the cafe. Mr. Whitlow maintains that Mr. O'Glee led him to believe that a lease agreement was in place on the premises; when, in fact, the arrangement with Kenyan Enterprises was on a month-to-month basis. The O'Glees correctly point out, however, that a month-to-month lease arrangement is a valid "lease agreement" under Louisiana law. See La. C.C. arts. 2674, 2685 and 2687. While the Buyers may have elected not to purchase the cafe had they known the specifics of the lease arrangement, they may not use their ignorance of those specifics to vitiate their consent to the sale.
The record indicates that Mr. Whitlow had contact with Kenyan Enterprises as early as July 3, 1997. On that day, Kelley Kenyan left a message with Mr. Orr indicating that she needed to discuss the lease arrangement with Mr. Whitlow. On July 19, 1997, Ed Kenyan wrote a letter to Mr. Whitlow, which is marked "hand delivered," regarding Mr. Kenyan's desire to have an operating business in the location which housed the cafe, whether it be the Cola Café or another concern. The letter further indicates that no formal written lease existed outlining the "very specific requirements and responsibilities" as to the premises; and, that, due to his good relationship with Mr. O'Glee, the arrangement had been basically a handshake deal. Two days later, on July 12, 1997, Mr. Whitlow responded to Mr. Kenyan by handwritten note which indicated that he was considering selling the cafe or putting in a different sandwich concept in the cafe's location. An interoffice memorandum authored by Mr. Kenyan and dated February 6, 1998, reveals that eviction notices had been sent to the Buyers and that Mr. Kenyan was trying to find a new tenant. These facts lead us to conclude that Mr. Whitlow had several opportunities to inquire as to the specifics of the lease arrangement. We are cognizant that the existence of a satisfactory lease arrangement is an important component in the decision to purchase a business. In that regard, and, again, keeping in mind Mr. Whitlow's experience and business acumen, we find it surprising that the lease arrangement was not verified prior to the *1294 agreement to purchase the cafe. Failure to do so, however, will not now allow the Buyers to escape compliance with an otherwise enforceable contract.
We conclude, therefore, that the trial court was not manifestly erroneous in finding a binding agreement between the O'Glees and the Buyers. Since we find that the contract of sale of the Cola Café was perfected, we conclude that the trial court was correct in awarding a money judgment to the O'Glees representing the balance of the purchase price and in denying the Buyers' demand in reconvention for monies paid pursuant to the Buyers' document.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to Appellants, Mike Whitlow and Jonathan Orr.
AFFIRMED.
NOTES
[1] Mr. Whitlow was to acquire 67 percent interest in the cafe with Mr. Orr acquiring the remaining 33 percent. The record indicates that Mr. Whitlow is an experienced businessman who owns other restaurant concerns, including Master Chef Drive-In restaurant in Springhill and Monjuni's Italian Cafe in Bossier City. Mr. Orr was to be a silent partner in the business.
[2] There is a discrepancy in the testimony as to whether the price was to be $41,500 or $42,000. The trial court awarded the sum of $41,500, which amount is not contested on appeal.