DR. ALBERT LAGRAIZE

VERSUS

RACHELE BASLER, DERRICK RILEY AND
PEOPLE SPEAK, L.L.C.

NO. 20-CA-39

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 775-482, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING


September 09, 2020


**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Hans J. Liljeberg, and John J. Molaison, Jr.


**REVERSED AND REMANDED WITH INSTRUCTIONS.**
 **JJM**
 **JGG**
 **HJL**

COUNSEL FOR PLAINTIFF/APPELLANT,
DR. ALBERT LAGRAIZE
    Regel L. Bisso
    Robert G. Miller, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
RACHELE BASLER, DERRICK RILEY AND PEOPLE SPEAK, L.L.C.
    Thomas A. Robichaux

**MOLAISON, J.**

Appellant, Dr. Albert Lagraize, appeals the trial court's dismissal of his claims of ownership and security interests in two properties owned by the Appellee, People Speak, LLC, resulting from "loan agreements" in which Dr. Lagraize loaned the down payment for the purchase of those properties to Appellees, People Speak, LLC, Rachele Basler, and Derrick Riley. For the reasons discussed herein, we reverse the trial court's May 6, 2020 amended judgment in its entirety and find that People Speak, LLC is a party to the loan agreements, along with Basler and Riley, liable to repay the funds loaned to them by Dr. Lagraize.

Concerning Dr. Lagraize's claims for enforcement of the ownership and security interest provisions in the loan agreements, we remand these claims, as well as appellees' claims raised in their reconventional demand, for joinder of People Speak, LLC's lender, Loan Partners, LLC, and retrial. People Speak, LLC granted Loan Partners, LLC a mortgage on the properties at issue and Dr. Lagraize's claims to enforce the ownership and security interest provisions of the loan agreements may impair or impede Loan Partners, LLC's interests in the properties.

**Factual and Procedural History**

Dr. Lagraize, a retired veterinarian with a thirty-year background in real estate dealings, was approached by Rachele Basler (a real estate broker, certified occupancy specialist, and community apartment manager who worked at a law firm), to get involved with her and her partner, Derrick Riley's purchase of a property intended to be run as a "bed and breakfast." After formal offers were made on two properties in Orleans Parish, located at 1419 Dauphine Street ("Dauphine property") and 4417 Dryades Street ("Dryades property"), Dr.

Lagraize put down a $25,000 earnest money deposit for each property, and the parties negotiated terms.[1]

Dr. Lagraize drafted a handwritten "loan agreement" for the Dryades property, based on the negotiated terms on April 10, 2017. The document was signed by all parties in signature blocks designated for Lagraize, Basler, Riley, and People Speak, LLC.[2] Basler and Riley, who are currently married, started People Speak, LLC as a holding LLC for rental properties in November of 2012.

Later, when the Dauphine property became available, the parties decided to acquire it as well. A loan agreement for $382,500 for the down payment for the Dauphine property was typed by Basler and signed by the parties on May 1, 2017. This document, borrowing the format of the handwritten loan agreement, changed the signature blocks for Basler and Riley, referring to them as "Purchaser" and did not include a signature block for People Speak, LLC.

According to the original agreements "between Rachele Basler, Derrick Riley, both personally and People Speak LLC, hereafter known as borrowers, and Albert Lagraize, hereafter known as lender," Dr. Lagraize lent money "at an annual compounded interest rate of 25% for the down payment on the purchase" of the Dryades and Dauphine properties. The borrowers agreed to give Dr. Lagraize 20% "outright ownership" of the properties at the time of the act of sale as compensation for the loan. Basler and Riley also agreed to repay the loans, at an interest rate of 25%, according to a schedule within 15-16 months, and upon failure to make timely payments, the collateral would be an additional 40% interest in the ownership of the properties.

After further negotiations on May 22 and 23, 2017, the parties updated the loan agreements to increase the initial outright ownership interest for Dr. Lagraize

___

[1] Part of these negotiations are documented in emails between April 2 and 9, 2017.
[2] Initially, the agreed upon down payment loan was for $534,000.

from 20% to 37.5%.[3] Basler and Riley both signed the agreement as "purchaser" on May 23, 2017, and Dr. Lagraize signed it on May 24, 2017. The act of sale for both properties was conducted on May 24, 2017. Dr. Lagraize was present and signed as a witness when People Speak, LLC purchased the properties. People Speak, LLC entered into a multiple indebtedness mortgage with Loan Partners, LLC ("LP Nola") to secure present and future indebtedness of up to five million dollars for the purchase of the two properties.[4] No further agreements were entered into by the parties in furtherance of the obligations created by the loan agreements. Basler immediately began renting out the properties to guests.[5]

The appellees failed to make the first loan repayment on the Dryades property when it was due on August 24, 2017. On August 31, 2017, Dr. Lagraize filed a Petition for Declaratory and Miscellaneous Relief, seeking a ruling by the trial court that he was entitled to a 77.5% ownership interest in the Dryades property, including the 40% due to the appellees' default and the 37.5% he was to have received at the purchase.[6] On November 24, 2017, appellees defaulted on the first payment for the Dauphine property. Dr. Lagraize filed a First, Supplemental, Amended and Restated Petition to include a declaration of his right to a 77.5% interest in the Dauphine property. Dr. Lagraize file a notice of *lis pendens* with the Office of the Recorder in Orleans parish, including the loan agreements as "counter letters." Appellees had made no payments to Dr. Lagraize for either property at the time of the trial.

---

[3] The documents also finalized the loan amounts of $556,500 for the Dryades property and $365,000 for the Dauphine property.

[4] Only the first three pages of this loan document are present in Defense Exhibit 10 of the record.

[5] Many emails between the parties between May and August of 2017 show discussions between Basler and Dr. Lagraize on the management, problems, and profits of this short-term rental business.

[6] Dr. Lagraize's petition requested the declaratory and miscellaneous relief to include: 1. Declaring his rights under the Agreement; 2. Declaring that Appellees failed to comply with the terms and conditions of the Agreement; 3. Declaring he is the owner of 77.5% interest in the properties; 4. Declaring that he is entitled to have the ownership interest transferred to him; 5. Declaring the agreement is still in full force and effect; 6. Declaring that all further payments remain due and owing; 7. Declaring such additional rights, status, and other relief as may be reasonable in the premises; and 8. Issuing such writs, orders and process as are necessary in aid of the Court's jurisdiction in this matter.

Appellees filed an answer on August 6, 2018, alleging that Dr. Lagraize did not follow formalities for the conveyance of an interest in immovable property, his counter letter was defective, and raising the affirmative defense of duress. They further raised a reconventional demand for a declaratory judgment to maintain that People Speak, LLC is the sole owner of the properties, a judgment to remove the *lis pendens*, and for damages from not being able to refinance the properties due to the *lis pendens*. Appellees filed a motion for partial summary judgment on March 28, 2019, which was denied by the trial court on May 16, 2019.

A trial was held on August 13, 2019. During the trial, the parties testified that the properties were purchased by People Speak, LLC. Basler and Dr. Lagraize testified that the parties' original agreement was to give Dr. Lagraize a 20% interest in the properties, but on May 22, 2017, Dr. Lagraize requested a 51% interest which the parties negotiated to 37.5% in the final loan agreements. Both parties introduced emails sent between the parties and third parties which describe a plan to refinance the properties and record a second mortgage for Dr. Lagraize. Riley testified that Basler handled the negotiations, and his contribution to the LLC was his maintenance experience. Basler testified that People Speak, LLC was unable to pay Dr. Lagraize when the first payments became due because they had been unable to sell other properties to raise the funds. The parties submitted post-trial memoranda on August 23, 2019.

In an amended judgment, the trial court found Basler and Riley jointly and solidarily liable to Dr. Lagraize for the down payment, plus 12% interest per annum, and denied Dr. Lagraize's remaining claims by dismissing them with prejudice. The trial court granted the appellees' petition for reconventional demand, decreeing People Speak, LLC the sole owner of the properties, canceling and removing the *lis pendens*, but denying additional claims for monetary

damages.[7] In her written reasons for judgment, the trial court stated the parties failed to adhere to the agreements, there was no meeting of the minds, and the 25% interest rate was usurious.[8] Dr. Lagraize filed a timely notice of suspensive appeal.

**DISCUSSION**

Dr. Lagraize alleges five assignments of error in the trial court's judgment.

*First Assignment of Error*

Dr. Lagraize claims the trial court erred in failing to find liability on the part of People Speak, LLC. The amended judgment denied Dr. Lagraize's claims to any ownership interest in properties owned by People Speak, LLC. The trial court found that People Speak, LLC was not bound by the loan agreements. In the reasons for judgment, the court found:

> Nowhere on the document is the signature or express consent for an authorized member of People Speak, LLC to obligate the LLC. No express unanimous written consent authorizing Ms. Basler and/or Mr. Riley to sign the agreement on behalf of People Speak, LLC exists. Not only does the LLC operating agreement provide that "no member shall have any ownership interest in Company property in whole or in part" but also La. R.S. 12:1329 provides the same.

When a contract can be construed from the four corners of the instrument, interpretation of the contract is a question of law. *First Bank & Trust v. Redman Gaming of La., Inc.*, 13-369 (La. App. 5 Cir. 12/12/13), 131 So.3d 224, 228. If the terms are subject to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, determining the intent becomes, in part a question of

---

[7] In a written judgment of November 11, 2019, the trial court found People Speak, LLC is the owner of the properties and Basler and Riley are jointly and severally liable to Dr. Lagraize for a personal loan for the down payment amount, but did not include required decretal language to dispose of all claims raised in appellees' reconventional demand. On May 1, 2020, this panel remanded the case to the trial court in a *per curiam* order requesting a complete and final judgment on all claims decided at the August 13, 2019 trial. An amended judgment was filed on May 6, 2020.

[8] We note that appellate courts do not review reasons for judgment as a part of the judgment itself. La. C.C.P. art. 1918; *Burmaster v. Plaquemines Parish Govt.*, 07-1311 (La. 8/31/07), 963 So.2d 378, 379. The written reasons for judgment are merely an explication of the trial court's determinations. *State in the Interest of Mason*, 356 So.2d 530, 532 (La. App. 1 Cir. 1977). The Louisiana Supreme Court has held, however, that a court of appeal can use the reasons for judgment to gain insight into the district court's judgment, and we refer to them now for that purpose. *See Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So.3d 507.

fact. *Id.* Whether a contract is ambiguous is a question of law. *Id. citing Koeniger v. Newsome*, 03-1492 (La. App. 4 Cir. 2/4/04), 873 So.2d 652, 655. Whether a party signs in their individual capacity or as a representative is a question of fact. *Hohenesee v. Turner*, 13-615 (La. App. 4 Cir. 1/22/14), 133 So.3d 141, 143. The appellate court should only overrule the trial court upon a finding of manifest error. *Weimann v. Duhon*, 08-186 (La. App. 5 Cir. 10/28/08), 997 So.2d 647, 655-56, *writ denied*, 08-2814, 08-2815, 08-2830 (La. 3/13/09), 5 So.3d 117, 118.

The signature of the appellees as "Purchaser" on the contract is ambiguous. This Court has previously found that a member unambiguously binds the LLC and personally binds himself, when the signature block states the name of the LLC, by XXX, followed by "managing member and as personal guarantor." *N.E.N.H., LLC v. Broussard-Baehr Holdings, LLC,* 13-893 (La. App. 5 Cir. 5/14/14), 142 So.3d 91, *writ denied*, 14-1183 (La. 9/19/14), 149 So.3d 247. In the present case, the preamble to the loan agreement states that the agreement is between Basler and Riley, "both personally, *and* People Speak L.L.C, hereafter known as Borrowers" and Dr. Lagraize "as Lender." (emphasis added.) The signature block contains only spaces for signatures of "purchaser[s]" and lender. There is no clear indication that appellees signed in their individual capacity, as a member of the LLC, or on behalf of the LLC, the purchaser of the properties at issue. *See Hohenesee, supra.*

As stated by the trial court, a member of an LLC has no power to encumber the property of an LLC. La. R.S. 12:1329. A majority of members, however, may encumber an LLC. La. R.S. 12:1318. While the operating agreement for People Speak, LLC provides that no member has an ownership interest in LLC property, it also states that "Any Member" has the authority to bind the company in a contract. The operating agreement also states that "selling, transferring or loaning any Company property or using any Company property as collateral for a loan" requires the unanimous consent of all members. The loan agreements in this case

containing the signatures of both members of the LLC, coupled with the preamble, show their unanimous consent to use the company properties as "collateral for a loan" and "transferring" a portion of the company's interest in the properties to Dr. Lagraize.

While there was no signature of the LLC on the agreements, to interpret this to mean the LLC did not sign the document is contrary to case law and code articles on contract interpretation. The Louisiana Supreme Court has stated, "it is the members of LLCs who must act on behalf of the LLC; the LLC cannot provide a signature on its own." *Thomas v. Bridges*, 13-1855 (La. 5/7/14), 144 So.3d 1001, 1006. In the *Thomas* case, the sole member of the LLC signed individually in the signature block designated as a buyer, but the Supreme Court noted that the LLC was listed as "buyer" at the top of the executed purchase agreement, making the intent of the document unambiguous. *Id.* While the document in the current case is more ambiguous, due to the LLC members agreeing in their individual capacities *and* on behalf of the LLC, an ambiguity in the interpretation of documents "must be interpreted against the party who furnished its text." La. C.C. art. 2056.

Basler provided the signature blocks to the loan agreements. The handwritten loan agreement by Dr. Lagraize contained two blocks for People Speak, LLC to be signed by Basler and Riley, with two additional signature blocks for Basler and Riley. Basler introduced the new term "purchaser" into the signature block, despite the agreement's previous references to Basler, Riley, and People Speak as the "borrower." Parties cannot claim they did not agree to a contract because their signature is lacking when they prepared the contract and presented it to the other party for signature. *Finishers Drywall, Inc. v. B & G Realty, Inc.*, 516 So.2d 420, 422 (La. App. 1 Cir. 1987).

Dr. Lagraize testified that he thought the changed signature blocks were sufficient to bind the LLC. Basler testified that she did not tell Dr. Lagraize that it

was People Speak who would be the purchaser, rather than her. Basler and Riley never testified that the agreement was only entered into in their personal capacities. The email exchanges between the parties reflect Basler continuously stating that "I'm sole person on loan" and "all looks good for me to support this on my own." These statements could leave Dr. Lagraize with a lack of certainty as to which of the borrowing parties would be the "purchaser" of the properties at the time he entered into the loan agreements. As People Speak, LLC was the actual purchaser of the properties at the act of sale, not Basler and Riley personally, the use of that term, "purchaser," in the signature blocks of the loan agreements should be interpreted against Basler and Riley to show their intent to include People Speak, LLC as a liable party for the down payment loans.

Furthermore, the trial court stated in its reasons for judgment that the written unanimous consent by People Speak, LLC authorizing Basler and Riley to purchase and mortgage the properties at the Acts of Sale did not extend to Dr. Lagraize, as he was not a party to the act of sale as contemplated by the agreement signed on May 23, 2017. The "Unanimous Written Consent of People Speak, LLC" authorizes Basler and Riley "to execute *all* documents in connection with said purchase and mortgage" of the properties, including "promissory note, mortgage." (emphasis added). The document authorized the LLC to purchase and mortgage the Dryades and Dauphine properties and gave the members authority to act as agents for the purchase and mortgage of the properties. This consent document does not state that it only applies to certain parties at the act of sale. Dr. Lagraize signed the loan agreements on May 24, 2017, and there is no indication from the record as to whether he was aware of this authorization or acted in reliance on it.

We find the trial court was clearly erroneous in concluding that Basler and Riley signed only as individuals. In this case, the LLC's name is mentioned in the

preamble as a borrower, and any ambiguity in the actual signature block was introduced by Basler's revision of the contract. Therefore, we must interpret that ambiguity against Basler and People Speak, LLC when examining the parole evidence of the communications between the parties. We find that People Speak, LLC was a party to the loan agreement with Dr. Lagraize, as both members of the LLC signed the agreement. Therefore, we find the trial judge erred by dismissing Dr. LaGraize's claims against People Speak, LLC.

*Third and Fourth Assignments of Error*[9]

Dr. Lagraize asserts that the trial court erred in failing to find a binding contract and in finding there was no meeting of the minds between the parties. In the amended judgment, the trial court denied Dr. Lagraize's claims of an ownership interest created by the loan agreements and default on the repayment under his "mortgage." In her reasons for judgment, the trial judge found "[t]he confusion over who was to own the property, who was to manage the property, and how Mr. Lagraize was to be compensated for his financial contribution all serve to indicate that there was no meeting of the minds." The court stated that contrary to the terms of the contracts, Dr. Lagraize was not given any ownership interest in the properties at the act of sale, which he did not enforce at the time of the act of sale. Dr. Lagraize also failed to perfect his security interest for the collateral. The trial court found no binding contract, but, to put the parties into their positions "prior to the Act of Sale," the trial judge found the transactions constituted a personal loan to Basler and Riley.

The existence or nonexistence of a contract is a question of fact. *Townsend v. Urie*, 00–0730 (La. App. 1 Cir. 5/11/01), 800 So.2d 11, *writ denied*, 01-1678

---

[9] Dr. Lagraize asserts in a Second Assignment of Error that the trial court erred in finding he was not in good faith. We decline to discuss this assignment of error as the trial court did not make this finding in its judgment. The trial judge ordered the removal of the *lis pendens* due to her finding that Dr. Lagraize did not have a protected interest in the property of People Speak, LLC.

(La. 9/21/01), 797 So.2d 674; *Fox v. LAM*, 25,616 (La. App. 2 Cir. 2/23/94), 632 So.2d 877.  The determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong.  *O'Glee v. Whitlow*, 32,955 (La. App. 2 Cir. 4/7/00), 756 So.2d 1288.  Under Louisiana law, the formation of a valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause.  *Marcantel v. Jefferson Door Co., Inc.*, 01-1307 (La. App. 5 Cir. 4/10/02), 817 So.2d 236, 239.  The court must find there was a meeting of the minds of the parties to constitute the requirement of consent.  *Arias v. Albe*, 04-26 (La. App. 5 Cir. 5/26/04), 876 So.2d 179, 182; La. C.C. art. 1927.  Courts are obliged to give legal effect to contracts according to the intent of the parties.  La. C.C. art. 2045.  Parole evidence may be used to prove a vice of consent.  La. C.C. art. 1848.

Basler and Riley do not dispute that they agreed to repay the amounts Dr. Lagraize loaned for the down payments at a rate of 25% per annum, pursuant to the schedules outlined in the loan agreements.  They also admitted that they failed to repay any of the amounts due under the loan agreements.  As explained above, this Court finds that Basler and Riley also intended to bind People Speak, LLC to repay these loan amounts.

The testimony at trial by Basler was that she also agreed to give Dr. Lagraize a 20% interest in the Dryades property in April of 2017.  She testified that Dr. Lagraize had not received his outright ownership of the property because there was not anything recorded.  She testified that Dr. Lagraize "knew how he was going to get repaid. . . as an owner, if he's going to have an undivided interest, he has to be on title, which has to be on the mortgage. . . when we went to re-fi he was going to have to be on that mortgage if there was a second mortgage lien position."  She testified that "at his percentage of ownership, which was greater than LP Nola's percentage – the gap was 30 percent and if he was at 37 and-a-half percent, he would have had to be on the title to refinance that 70 percent."

Notably, the appellees never claimed in their pleadings they did not agree to give Dr. Lagraize an ownership interest in the properties. They argued that there was no meeting of the minds due to duress vitiating consent, but they never claimed that they did not agree to the terms. While Basler testified that she felt pressured to and dissatisfied with increasing Dr. Lagraize's percentage two days before the act of sale, she nonetheless agreed to give Dr. Lagraize "an undivided 37.5% interest outright ownership at time of Act of Sale."

Email exchanges also show the parties' agreement to give an ownership interest. After the initial agreements were signed, on April 18, 2017, Basler offered Dr. Lagraize another 5% ownership for the extra exposure. On May 23, 2017, Basler emailed Dr. Lagraize, "I updated your outright interest." Dr. Lagraize is continuously referred to after the signing of the first loan agreement as an "investor with 20% interest"; later she tells him he is "owed your funds that equate to your percent buy in plus your interest payment." Basler frequently refers to him as a business partner. On August 24, 2017, after the act of sale, she refers to him "as a partner per the agreement" after emailing him that "the way you attacked this deal was for your benefit and never as a partnership as it was signed in paper to be."

Although Dr. Lagraize was not formally put on the title at the act of sale, as he previously requested in an email on May 22, 2017, this is not required by the language of the agreement.[10] Basler emailed "Carrie" at the Title Depot and Dr. Lagraize to inquire into the feasibility of waiting a week after the act of sale to put the secondary financing on the title as "I still do not want to place on the title at the act of sale to avoid the risk of alarm [to] all parties." She tells Dr. Lagraize in an

---

[10] The trial court's reasons for judgment discusses "the parties' failure to actually adhere to [the agreements] within the time constraints required by the agreements." However, the contract itself does not state a time required for placing Dr. Lagraize on the title, but only states that he would be given "outright ownership at time of Act of Sale."

email, "trust me on this I DO this lending...it's how they see the money coming and going." She leads him to believe that his ownership interest is protected by the loan agreement, emailing him "your promissory note is in full effect at closing for our side deal" and "[y]ou and I's promissory note can be recorded wherever need be parish-wise." While Basler, in a May 22, 2017 email, says that he cannot have ownership interest outright and interest on the investment" she still signs the loan agreement on May 23, 2017, which agrees to provide both. Further, the parties' actions after the act of sale reflect Basler treating Dr. Lagraize as a partner, or at least a person with an interest in the properties, discussing pricing, landscaping, furniture, and cleaners.

Despite the evidence of the parties' agreement, the trial court erroneously found there was confusion over who was to own the properties and how Dr. Lagraize was to be compensated for his financial contribution. The parties agreed that Dr. Lagraize would have a 37.5% ownership interest in the properties. As to how Dr. Lagraize would be compensated, the agreement is clear that he would be repaid, with interest, according to a schedule. The trial court focused on the lack of a clear agreement as to who would manage the properties, but this does not go to the cause or consent of the contract to obtain a loan for the purchase of that property.[11]

As to the purported mortgage, the evidence shows the parties clearly agreed to record a second mortgage upon refinancing of the properties.[12] The testimony of the parties established that Dr. Lagraize would be provided with a second mortgage once People Speak, LLC refinanced the mortgage, which had not occurred as of the time of the trial. Basler testified that after closing, she was working on a

---

[11] Furthermore, there was testimony that Basler and Dr. Lagraize had discussed the providing of profits and losses quarterly, with Dr. Lagraize involved in decision making but not daily managerial matters.
[12] The trial court was correct in her assertion that the loan agreement did not "create" the mortgage, but the intent to create a mortgage is found in the loan agreements. A mortgage is an accessory contract made to provide security for performance of the principal contract. La. C.C. art. 1913. *See also* La. C.C. arts. 3287-3290 for mortgage requirements.

commercial approval on the refinance because they could not put a second mortgage on the properties for Dr. Lagraize's protection until LP Nola was "out of the way." Emails also show their discussions regarding the inability of appellees to provide a second mortgage until they refinanced the multiple indebtedness mortgage with LP Nola. Basler testified that no commercial lender would lend them money without all people on the title being on the mortgage. In the email of June 24, 2017, Basler tells Dr. Lagraize that "[lenders] do not look favorable at second mortgages on file for that so as soon as I shoot over refi approval I'll let you know when that can be processed." The parole evidence shows that the parties intended to create a second mortgage in the future. Future things may be the object of a contract. La. C.C. art. 1976.

The failure of Dr. Basler to get titled ownership at the act of sale or a second mortgage are not evidence of a lack of agreement, but evidence of a failure of the parties to execute the instruments necessary to fulfill the agreement. A promisor who has no intention of performing a promise at the time a promise is made commits fraud; a promise honestly made, but subsequently unfulfilled, is a failure to perform. *Automatic Coin Enterprises, Inc. v. Vend-Tronics, Inc*., 433 So.2d 766, 767-68 (La. App. 5 Cir. 1983).[13] Although specific details may not be determined at the time of acceptance, a party cannot claim no meeting of the minds when he knows essential terms. *Chaisson v. Chaisson,* 29,243 (La. App. 2 Cir. 2/26/97), 690 So.2d 899, 901. In the *Chaisson* case, the court disagreed with a son's claim that there was no meeting of the minds when his parents loaned him money. *Id.* Although he argued that he "merely took the money" without explicitly agreeing to terms, the court found that he knew there would be a term for repayment and interest. *Id.*

---

[13] It would be "deliberate deception and false pretense" where a promisor has no intention of performing a promise. *Id.*

Thus, we find that the trial court was manifestly erroneous in finding that there was no meeting of the minds concerning the loan agreements. The parties agreed that they were to repay Dr. Lagraize for the down payments loaned in the amounts of $365,000.00 and $556,500.00, plus 25% interest per annum, according to the schedules outlined in the loan agreements and failed to do so. Dr. Lagraize is entitled to judgment against the appellees for the recovery of these amounts.[14]

The evidence also shows all parties understood that Dr. Lagraize would be given an ownership percentage in the properties and a second mortgage upon refinancing. However, this Court feels constrained in granting Dr. Lagraize's request to find these portions of the loan agreements valid and enforceable without the joinder of all parties needed for a just adjudication. People Speak, LLC's mortgage with LP Nola states that "Mortgagor is prohibited from putting any inferior mortgages, encumbrances and/or liens against the property until this Mortgage loan is paid in full." It also prohibits "the sale or transfer...to a third person(s) or other entity, without the express written consent of the Mortgagee." This Court has previously found that the mortgage holder of immovable property that is at issue in the litigation is a party needed for a just adjudication. *Rourke v. Estate of Dretar*, 17-672 (La. App. 5 Cir. 5/23/18), 248 So.3d 653, 658-9. The exception of nonjoinder of a party under article 641 and 642 may be noticed by an appellate court on its own motion.[15] La. C.C. art. 927(B). Upon the recognition of the absence of a necessary party, the appropriate remedy is to set aside the judgment at issue, remand the matter for joinder of the absent party, and retrial. *Jefferson Fin. Credit Union v. Billy's Used Cars, Towing & Recovery*, 10-315 (La. App. 5 Cir. 11/23/10), 54 So.3d 702, 704.

---

[14] As People Speak, LLC, Basler, and Riley obtained the loan for a business purpose, there is not a twelve percent interest ceiling, as discussed further in the Fifth Assignment of Error.
[15] La. C.C. art. 641(2) provides that a party is necessary if in his absence, his ability to protect his interest may be impaired or impeded, or any of the parties would be subject to a substantial risk of incurring multiple or inconsistent obligations.

Therefore, we reverse the dismissal of Dr. Lagraize's claim for declaratory judgment and the granting of appellees' reconventional demand, and remand this matter for the joinder of the absent party and retrial on the issue of whether Dr. Lagraize is entitled to enforcement of the parties' agreement to transfer ownership of a portion of the properties to him and to provide him a security interest in the properties.

*Fifth Assignment of Error*

Dr. Lagraize claims the trial court erred in reducing the interest rate from 25% to 12% upon the trial court's finding that it was usurious under La. R.S. 9:3500. Appellate review of a question of law is simply a decision as to whether the lower court's decision is legally correct or incorrect. *Phoenix Assur. Co. v. Shell Oil Co.*, 611 So.2d 709 (La. App. 4 Cir. 1992). If the trial court's decision was based on its erroneous application of the law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court. *Kem Search, Inc., v. Sheffield*, 434 So.2d 1067 (La. 1983). Therefore, we review this finding *de novo*.

La. R.S. 9:3500(C)(1) provides that conventional interest cannot exceed twelve percent per annum. The trial court made this finding with regards to the agreement between Basler, Riley, and Dr. Lagraize as a "personal loan." As we declared previously, the loan was obtained by People Speak, LLC, Basler, and Riley, for commercial or business purposes. The loan agreements state that the money was borrowed for the down payment on the purchases of "the business known as Maison DuBois" and "the business known as Blue Lagoon NOLA." The twelve percent interest ceiling does not apply to a loan made for commercial or business purposes. La. R.S. 9:3500(D); *Spencer v. Boucher*, 587 So.2d 97, 101 (La. App. 2 Cir. 1991). La. R.S. 9:3509(A) further provides that "Notwithstanding any other provisions of the law of this state to the contrary, any debtor that is . . . a

limited liability company formed pursuant to the laws of this state...borrowing funds for commercial, business, or agricultural purposes...may agree to pay interest in excess of the maximum rate of conventional interest authorized by the laws of this state. . .'' Therefore, we find that the 25% interest rate was not usurious due to the business or commercial exception.

CONCLUSION

After carefully reviewing the record, we find the trial court erred in finding no obligation on the part of People Speak, LLC and finding no consent to the contract between the parties. While the "loan agreements" are confusing documents, due to the parties' failure to obtain legal assistance to protect their interests in dealing with properties worth millions of dollars, it is clear that each party, including People Speak, LLC, consented to repaying the funds loaned for the down payments and to Dr. Lagraize having an interest in the properties and second mortgages to be recorded after refinancing. Unfortunately, Loan Partners, LLC, as the mortgage holder of the properties at issue, is a necessary party to this litigation and must be joined to protect its interest as well as the parties' risk of incurring inconsistent obligations. Upon retrial, if the ownership and security provisions of the loan agreements are found to be valid and enforceable in light of the mortgage, Dr. Lagraize may seek specific performance to enforce his interests, or monetary damages if the trial court finds performance to be impracticable.[16]

Thus, we reverse the final judgment of May 6, 2020, and find that People Speak, LLC, in addition to Rachele Basler and Derrick Riley, are liable to Dr.

---

[16] Upon an obligor's failure to perform an obligation to execute an instrument, the court shall grant specific performance, if demanded by the obligee. La. C.C. art. 1986. There is "a right to specific performance for breach of contract except when it is impossible, greatly disproportionate in cost to the actual damage caused, no longer in the creditor's interest, or of substantial negative effect upon the interests of third parties." *Charter School of Pine Grove, Inc. v. St. Helena Parish School Bd.*, 07-2238 (La. App. 1 Cir. 2/19/09) 9 So.3d 209, 222 (*citing J. Weingarten, Inc. v. Northgate Mall, Inc.*, 404 So.2d 896, 901 (La. 1981)). When specific performance is impracticable or when the court, in its discretion, refuses to grant specific performance of an obligation to do, the court may instead fix damages. *Lombardo v. Deshotel*, 94-1172 (La. 11/30/94), 647 So.2d 1086, 1090; *Bourgeois v. Dunn*, 01–1185 (La. App. 1 Cir. 6/21/02), 822 So.2d 708, 711.

Lagraize for the down payments loaned to them in the amount of $365,000.00 and $556,500.00, plus 25% interest per annum.  We remand for joinder of Loan Partners, LLC, and retrial of all remaining claims.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



## FIFTH CIRCUIT
### 101 DERBIGNY STREET (70053)
### POST OFFICE BOX 489
### GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 9, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-39

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
REGEL L. BISSO (APPELLANT)          ROBERT G. MILLER, JR. (APPELLANT)          PEDRO F. GALEAS (APPELLEE)
THOMAS A. ROBICHAUX (APPELLEE)

### MAILED
NO ATTORNEYS WERE MAILED